DAVID C. JOHNSTON
LAW OFFICES OF DAVID C. JOHNSTON
1600 G. STREET, SUITE 102
MODESTO, CALIFORNIA 95354
TEL (209)579-1150


Attorney for Debtor in Possession,
INTERIOR COMMERCIAL INSTALLATION, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

In Re:                                        CASE NO. 18-*42874*

    INTERIOR COMMERCIAL       CHAPTER 11
    INSTALLATION, INC.,

        Debtor in Possession.
_____/        JUDGE: HON. William J. Lafferty

**EXHIBITS**

Exhibit A:    Budget

Exhibit B:    Schedule of loans that have been taking daily loan payments

Exhibit C:    Threatening Letters from Yellowstone to Debtor's Customers

Exhibit D:    Threatening Letters from Kalamata to Debtor's Customers

Exhibit E:    Contract and UCC-1 of Yellowstone

Exhibit F:    Contract and UCC-1 of Kalamata


Exhibit H:    2017 Tax Return

1

**Interior Commercial Installation, Inc.**
**Monthly Budget**

| Description | Income | Expenses |
|---|---|---|
| Income | $488,871.00 | |
| Materials | | 155,370.00 |
| Salaries | | 150,425.00 |
| Supplies | | 25,834.00 |
| Rent | | 24,562.00 |
| Insurance | | 6,000.00 |
| Fuel | | 8,500.00 |
| Truck Expense | | 9,000.00 |
| Repairs | | 7,200.00 |
| Advertising | | 1,200.00 |
| IT | | 3,000.00 |
| Computers | | 2,100.00 |
| Workers Comp. | | 7,500.00 |
| Payroll Taxes | | 14,000.00 |
| Utilities | | 4,000.00 |
| Accounting & Bookkeeping | | 800.00 |
| Payroll Service | | 860.00 |
| Health & Dental | | 4,980.00 |
| Telephone | | 2,750.00 |
| Machine Leasing | | 5,000.00 |
| Consulting | | 1,000.00 |
| Sales Tax | | 400.00 |
| Loan Fees | | 10,000.00 |
| | $488,871.00 | $444,481.00 |

**Net Profit**  $  44,390.00

Exhibit A

**Interior Commercial Installation, Inc.**
**Schedule of Loans that take daily payments from Corporate bank accounts**

| Creditor Name | Orininal Date | Actual Funds Received | *Original Debt | Daily Amount Taken From Account | Present Balance | Claimed by creditor to be Interest Rate | Monthly Payment | Collateral |
|---|---|---|---|---|---|---|---|---|
| Deal Struck | 3/20/2017 | Unknown | $288,586 | No Daily | $158,289 | 17% | $10,288 | 0 |
| Nextwave | 2/7/2018 | $350,000 | $472,500 | $9,375 (Weekley) | $125,625 | 11.60% | $40,625 | 0 |
| Everest - EBF | 5/4/2018 | $197,355 | $286,000 | $1,589 | $106,455 | 15% | $34,426 | 0 |
| Kalamata | 7/18/2018 | $155,002 | $234,000 | $1,564 | $118,712 | 15% | $33,843 | UCC-1 |
| TVT Capital | 10/11/2018 | $104,500 | $157,300 | $1,430 | $140,140 | 15% | $30,983 | 0 |
| Yellowstone | 10/11/2018 | $144,000 | $206,850 | $1,724 | $184,438 | 25% | $37,353 | 0 |
| Forward Financial | 10/12/2018 | $82,705 | 124,320 | 1,243 | $110,645 | 10% | $26,936 | 0 |
| TOTALS: | | | $1,769,556 | | $944,304 | | $214,454 | |

EXHIBIT 

*The amount of debt agreed undertaken; The amount the lender transferred to Debtor was considerably less.



# MAX RECOVERY GROUP LLC

55 BROADWAY
3RD FLOOR
NEW YORK, NEW YORK 10006

VADIM SEREBRO, ESQ.
*VICE PRESIDENT & GENERAL COUNSEL*
E-mail: Legal@MaxRecoveryGroup.com

TEL: 646.517.8956
FAX: 646.398.5652
*(not for service of papers)*

November 19, 2018

**Commercial Casework Inc**
**Attn: Legal Order Processing**

<u>UCC LIEN NOTICE</u>

Re:   <u>***Interior Commercial Installation, Inc.***</u>
<u>***d/b/a Interior Commercial Installation***</u>
<u>***EIN: 46-2799098***</u>
<u>***Balance due to Yellowstone Capital West***</u>
<u>***LLC:***</u>
<u>***$172,370.00***</u>

Dear Legal Order Processing:

I am one of the attorneys for, and General Counsel to, Max Recovery Group, LLC, the collections firm hired by Yellowstone Capital West LLC ("YSCW"). This notice is being sent pursuant to UCC §9-406 as it has come to our attention that Commercial Casework Inc has been conducting business with, and forwarding receivables to, Interior Commercial Installation, Inc. d/b/a Interior Commercial Installation (the "Merchant"), located at 3670 Concord Ave, Brentwood, CA 94513.

Please be advised that the Merchant has defaulted on a secured merchant agreement entered into by and between the Merchant and YSCW on 10/11/2018, a copy of which is enclosed herein for your reference (the "Agreement"). The balance currently due and owing to YSCW pursuant to the Agreement is $172,370.00.

According to the Agreement, YSCW purchased $206,850.00 of the Merchant's future accounts-receivable for the purchase price of $150,000.00. The Agreement was structured so that YSCW was to receive a percentage of all of the Merchant's receipts. In accordance with the Agreement, YSCW filed a UCC-1 financing statement with the appropriate Secretary of State, thereby obtaining a perfected security interest in the Merchant's assets, including without limitation the Merchant's receipts, making YSCW a secured creditor with respect to the accounts-receivable of the Merchant. A copy of the UCC-1 is also enclosed herein for your reference.

Exhibit C-1

Pursuant to Section 9-406 of the Uniform Commercial Code (UCC), you are directed to forward all receipts due the Merchant to YSCW as same become due. Making your payment directly to YSCW is the only way to assure that your payment is, in fact, credited to your account obligations to the Merchant. Please understand that no representative of the Merchant has any authority to collect or receive your payment. Payment made to the Merchant will not discharge your obligation as described above and will result in you paying the obligation twice as UCC 9-406 directs that once an account debtor has been notified of the assignment of an account, the account debtor may not discharge the account obligation by paying the assignor (in this case, the Merchant). Thus, remitting payment to anyone other than YSCW will still result in your having to pay YSCW.

We trust that you share YSCW's desire to avoid the time, expense and inconvenience which would inevitably accompany formal legal proceedings and will, therefore, promptly forward full payment in order to amicably resolve this situation. If need be, YSCW will indemnify Commercial Casework Inc for all actions taken with respect to this matter.

Please comply with the above immediately, and contact me at (646) 517-8956, or at legal@maxrecoverygroup.com, if you have any questions or follow up. Thank you in advance for your anticipated cooperation in this matter.

Sincerely,
**MAX RECOVERY GROUP LLC**

By: _____
Vadim Serebro, Esq.

C - 2



# ABF
## SERVICING

November 16, 2018

Attention: Commercial Casework Inc
Attn: Legal
41780 Christy St
Fremont, California 94538

### UCC LIEN NOTICE AND NOTICE OF POWER OF ATTORNEY GRANTED BY MERCHANT TO KALAMATA CAPITAL GROUP GIVING KALAMATA CAPITAL GROUP POWER-OF-ATTORNEY OVER ACCOUNT RECEIVABLES OF MERCHANT

Re: INTERIOR COMMERCIAL INSTALLATION, INC / EURO SURFACING LLC / CJ INSTALLATIONS INC.
__Balance due to Kalamata Capital Group: $109,654.00__

Dear Sir/Madam

I represent Kalamata Capital Group in the above matter. This notice is being sent pursuant to UCC 9-406; you have you have a balance owed to Interior Commercial Installation, Inc / Euro Surfacing LLC / CJ Installations Inc. (the "Merchant"), located at 3850 Balfour Rd Brentwood, California 94513.

Pursuant to the enclosed Agreement, Kalamata Capital Group purchased $234,300.00 of the Merchant's future accounts. The Agreement was structured so that Kalamata Capital Group was to receive a portion of all the Merchant's deposits. In accordance with the Agreement, Kalamata Capital Group filed a UCC-1 financing statement with the Secretary of State of California, thereby obtaining a perfected security interest in the Merchant's assets, including without limitation, the Merchant's accounts receivables. A copy of the UCC 1 is also enclosed herein for your reference.

The Merchant has breached the Agreement due to non-payment of the receivables and therefore is currently in default.

It has come to Kalamata Capital Group's attention that you have a balance owed to the Merchant or have been holding funds for the Merchant. This notice is to inform you that by not forwarding said funds to Kalamata Capital Group is a violation of the UCC-1 filing and security interest, and hereby interfering with the Agreement entered into by and between the Merchant and Kalamata Capital Group.

Please contact me with any questions.

Steven Berkovitch Esq.
ABF Servicing-General Counsel
(212) 433-2298

5 Hanover Sq. Suite 2102 New York, New York 10004 P: (212) 433-2298 F: (347) 331-0552

Exhibit D

# UCC FINANCING STATEMENT
**FOLLOW INSTRUCTIONS**

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
CSC    1-800-858-5294

**B. E-MAIL CONTACT AT FILER (optional)**
SPRFiling@cscglobal.com

**C. SEND ACKNOWLEDGEMENT TO:** (Name and Address)

1538 24351
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: California
(S.O.S.)

Initial Filing #: 187678134984
Initial Book #:
Initial Page #:
Initial Filing Date: 10/19/2018

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of Item 1 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | INTERIOR COMMERCIAL INSTALLATION, INC. | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 3670 CONCORD AVE | CITY BRENTWOOD | STATE CA | POSTAL CODE 94513 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of Item 2 blank, check here ☐ and provide the Individual Debtor information in Item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | INTERIOR COMMERCIAL INSTALLATION | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 3670 CONCORD AVE | CITY BRENTWOOD | STATE CA | POSTAL CODE 94513 | COUNTRY USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | CORPORATION SERVICE COMPANY, AS REPRESENTATIVE | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS P.O. BOX 2576 UCCSPREP@CSCINFO.COM | CITY Springfield | STATE IL | POSTAL CODE 62708 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All Assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credits Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN, THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCER IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

| 5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) | ☐ being administered by a Decedent's Personal Representative |
|---|---|
| 6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility | 6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing |
| 7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor | |

**8. OPTIONAL FILER REFERENCE DATA:**
1538 24351

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)
This document was auto-generated from data received from the California Department of State

*Exhibit E-1*

# YELLOWSTONE CAPITAL WEST, LLC

116 Nassau Street, Suite 804, New York, NY 10038

### SECURED MERCHANT AGREEMENT

CFL License Number
603-K239

This agreement, dated 10/11/2018, between YELLOWSTONE CAPITAL WEST, LLC ("YCW") and the merchant listed below (the "Merchant"):

Business Legal Name: INTERIOR COMMERCIAL INSTALLATION, INC.
D/B/A: INTERIOR COMMERCIAL INSTALLATION
Type of Entity: Corporation                    EIN #: 46-2799098
Physical Address: 3670 CONCORD AVE, BRENTWOOD, CA 94513
Mailing Address: 3670 CONCORD AVE, BRENTWOOD, CA 94513

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to YCW (making YCW the absolute owner) in consideration of the funds provided ("Purchase Price") specified below, the Specified Percentage (defined below) of Merchant's future accounts, contract rights and other obligations arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts") defined as all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of the merchant's business), for the payment of Merchant's sale of goods or services until the amount specified below (the "Purchased Amount") has been delivered by Merchant to YCW (the "Agreement" or "Merchant Agreement").

The Purchased Amount shall be paid to YCW by Merchant's irrevocably authorizing only ONE depositing account acceptable to YCW (the "Account") to remit the percentage specified below (the "Specified Percentage") of the Merchant's settlement amounts due from each transaction, until such time as YCW receives payment in full of the Purchased Amount. Merchant hereby authorizes YCW to ACH Debit the specified remittances from the Merchant's bank account on a daily basis and will provide YCW with all required access codes, and monthly bank statements. Merchant understands that it is responsible for ensuring that the specified percentage to be debited by YCW remains in the account and will be held responsible for any fees incurred by YCW resulting from a rejected ACH attempt or an event of default. (See Appendix A). YCW is not responsible for any overdrafts or rejected transactions that may result from YCW's ACH debiting the specified amounts under the terms of this agreement. YCW may, upon Merchant's request, adjust the amount of any payment due under this Agreement at YCW's sole discretion and as it deems appropriate. Notwithstanding anything to the contrary in this Agreement or any other agreement between YCW and Merchant, upon the violation of any provision contained the MERCHANT AGREEMENT TERMS AND CONDITIONS or the occurrence of an Event of Default under the MERCHANT AGREEMENT TERMS AND CONDITIONS, the Specified Percentage shall equal 100%. A list of all fees applicable under this agreement is annexed hereto in Appendix A.

| PURCHASE PRICE: | SPECIFIED PERCENTAGE: | PURCHASED AMOUNT: |
|---|---|---|
| $150,000.00 | 25% | $206,850.00 |

**THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "SECURITY AGREEMENT AND GUARANTY" AND "ADMINISTRATIVE FORM" HEREOF ARE HEREBY INCORPORATED HEREIN AND MADE A PART OF THIS AGREEMENT.**

FOR THE MERCHANT #1
By: _(signature)_

Name: JENS C JENSEN
Title: OWNER
SSN: 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

OWNER/GUARANTOR #1
By: _(signature)_

Name: JENS C JENSEN
SSN: 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

FOR THE MERCHANT #2
By:

Name: N/A
Title: N/A
SSN: N/A

OWNER/GUARANTOR #2
By:

Name: N/A
SSN: N/A

To the extent set forth herein, each of the parties is obligated upon his, her or its execution of the Agreement to all terms of the Agreement, including the Additional Terms set forth below. Each of above-signed Merchant and Owner(s) represents that he or she is authorized to sign this Agreement for Merchant, legally binding said Merchant to pay this obligation and that the information provided herein and in all of YCW documents, forms and recorded interviews is true, accurate and complete in all respects. If any such information is false or misleading, Merchant shall be deemed in material breach of all agreements between Merchant and YCW, and YCW shall be entitled to all remedies available under law. YCW may produce a monthly statement reflecting the delivery of the Specified Percentage of Receivables from Merchant via Processor and/or Operator to YCW. An investigative report may be made in connection with the Agreement. Merchant and each of the above-signed Owners authorizes YCW, its agents and representatives and any credit-reporting agency engaged by YCW, to (i) investigate any references given or any other statements or data obtained from or about Merchant or any. of its Owners for the purpose of this Agreement, and (ii) pull a credit report at any time now or for so long as Merchant and/or Owners(s) continue to have any obligation owed to YCW as a consequence of this Agreement or for YCW's ability to determine Merchant's eligibility to enter into any future agreement with Company.

**ANY MISREPRESENTATION MADE BY MERCHANT OR OWNER IN CONNECTION WITH THIS AGREEMENT MAY CONSTITUTE A SEPARATE CAUSE OF ACTION FOR FRAUD OR INTENTIONAL MISREPRESENTATION.**

1493369

E-1

Case: 18-42874   Doc# 3   Filed: 12/07/18   Entered: 12/07/18 12:48:10   Page 8 of 56

MERCHANT AGREEMENT TERMS AND CONDITIONS

# I. TERMS OF ENROLLMENT IN PROGRAM

**1.1. Merchant Deposit Agreement.** Merchant shall execute an agreement (the "Merchant Deposit Agreement") acceptable to YCW, and appoint a Bank acceptable to YCW, to obtain electronic fund transfer services and/or "ACH" payments. Merchant shall provide YCW and/or its authorized agent with all of the information, authorizations and passwords necessary to verify Merchant's receivables, receipts and deposits into the account. Merchant shall authorize YCW and/or it's agent to deduct the amounts owed to YCW for the Receipts as specified herein from settlement amounts which would otherwise be due to Merchant from electronic check transactions and to pay such amounts to YCW by permitting YCW to withdraw the specified percentages by ACH debiting of the account. The authorization shall be irrevocable absent YCW's written consent.

**1.2 Future Purchases.** YCW reserves the right to rescind the offer to make any purchase payments hereunder, in its sole discretion.

**1.3 Financial Condition.** Merchant and Guarantor(s) authorize YCW and its agents to investigate their financial responsibility and history, and will provide to YCW any bank or financial statements, tax returns, etc., as YCW deems necessary prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable for release of financial information. YCW is authorized to update such information and financial profiles from time to time as it deems appropriate.

**1.4 Transactional History.** Merchant authorizes their bank to provide YCW with Merchant's banking and/or credit-card processing history to determine qualification or continuation in this program.

**1.5 Indemnification.** Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by YCW for monies owed to YCW from Merchant and (b) actions taken by Processor in reliance upon information or instructions provided by YCW.

**1.6 No Liability.** In no event will YCW be liable for any claims asserted by Merchant under any legal theory for lost profits, lost revenues, lost business opportunities,

exemplary, punitive, special, incidental, indirect or con sequential damages, each of which is waived by Merchant and Guarantor(s).

**1.7 Reliance on Terms.** Section 1.1, 1.9, 1.10 and 2.5 of this Agreement are agreed to for the benefit of Merchant, YCW and Processor, and notwithstanding the fact that Processor is not a party of this Agreement, Processor may rely upon their terms and raise them as a defense in any action.

**1.8 Sale of Receipts.** Merchant and YCW agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount and that such Purchase Price is not intended to be, nor shall it be construed as a loan from YCW to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement equals the fair market value of such Receipts. YCW has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to YCW in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services and the payment therefore by Merchant's customers in the manner provided in Section 1.1. In no event shall the aggregate of all amounts be deemed as interest hereunder and charged or collected hereunder exceed the highest rate permissible at law. In the event that a court determines that YCW has charged or received interest hereunder in excess of the highest rate allowed by law, then the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and YCW shall promptly refund to Merchant any interest received by YCW in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that YCW not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law.

**1.9 Power of Attorney** Merchant irrevocably appoints YCW as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to YCW from Processor, or in the case of a violation by Merchant of Section 1.10 or the occurrence of an Event of Default under Section III hereof, from Merchant, under this Agreement, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and

collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to YCW; and (v) to file any claims or take any action or institute any proceeding which YCW may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount.

**1.10 Protections against Default.** The following Protections 1 through 8 may be invoked by YCW, immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the YCW electronic check processor; (b) Merchant changes its arrangements with Processor in any way that is adverse to YCW; (c) Merchant changes the electronic check processor through which the Receipts are settled from Process or to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check transactions to another processor; (d) Merchant interrupts the operation of this business (other than adverse weather, natural disasters or acts of God) transfers, moves, sells, disposes, transfers or otherwise conveys its business or assets without (i) the express prior written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; or (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YCW at law, in equity or otherwise pursuant to this Agreement, Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. YCW may enforce the provisions of the Personal

Owner 1 Initials: _____

Owner 2 Initials: _____

Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon execution of this Agreement, deliver to YCW an executed confession of judgment in favor of YCW in the amount of the Purchase Amount stated in the Agreement, plus attorneys' fees calculated at twenty-five percent (25%) of the balance due hereunder at the time of breach. Upon breach of any provision in this paragraph 1.10, YCW may enter that confession of judgment as a judgment with the Clerk of the Court, without notice, and execute thereon. Protection 4. YCW may enforce its security interest in the Collateral identified in the Security Agreement herein. Protection 5. YCW may proceed to protect and enforce its rights and remedies by lawsuit. In any such lawsuit, in which YCW shall recover judgment against Merchant, Merchant shall be liable for all of YCW's costs of lawsuit, including but not limited to all reasonable attorneys' fees and court costs (in addition to any remedies pursuant to Protection 3 of this section 1.10). Protection 6. Merchant shall upon execution of this Agreement, delivery to YCW an executed assignment of lease of Merchant's premises in favor of YCW. Upon breach of any provision in this paragraph 1.10, YCW may exercise its rights under such assignment. Protection 7. YCW may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise, in an amount consistent with the Specified Percentage. Protection 8. YCW shall have the right, without waiving any of its rights and remedies and without notice to Merchant and/or Guarantor(s), to notify Merchant's credit card processor of the sale of Receipts hereunder and to direct such credit card processor to make payment to YCW of all or any portion of the amounts received by such credit card processor on behalf of Merchant. Merchant hereby grants to YCW an irrevocable power - of-attorney, which power-of-attorney shall be coupled with an interest, and hereby appoints YCW or any of YCW representatives as Merchant's attorney-in-fact, to take any and all action necessary to direct such new or additional credit card processor to make payment to YCW as contemplated by this Section.
1.11    Protection    of    Information. Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner, in respect of himself or herself personally, authorizes YCW to disclose information concerning Merchant's and each Owner's and/or Guarantor(s)'s credit standing and business conduct only, to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant, Guarantor(s), and Owner(s) hereby waives to the maximum extent permitted by law any claim for damages against YCW or any of its affiliates relating to any (i) investigation undertaken by or on behalf of YCW as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.
1.12    Confidentiality.    Merchant understands and agrees that the terms and conditions of the products and services offered by YCW, including this Agreement and any other YCW documentation s (collectively, "Confidential Information") are proprietary and confidential information of YCW. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of YCW to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this Section 1.12.
1.13    D/B/A's.    Merchant    hereby acknowledges and agrees that YCW may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between YCW and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that as of this date and during the term of this Agreement:
2.1    Financial Condition and Financial Information. Its bank and financial statements, copies of which have been furnished to YCW, and future statements which will be furnished hereafter at the discretion of YCW, fairly represent the financial condition of Merchant at such dates, and prior to execution of the Agreement, there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant has a continuing, affirmative obligation to advise YCW of any material adverse change in its financial condition, operation or ownership. YCW may request statements at any time during the performance of this Agreement and the Merchant shall provide them to YCW within 5 business days. Merchant's failure to do so is a material breach of this Agreement.
2.2    Governmental Approvals. Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its properties and to conduct the business in which it is presently engaged.
2.3    Authorization. Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.
2.4    Insurance. Merchant will maintain business-interruption insurance naming YCW as loss payee and additional insured in amounts and against risks as are satisfactory to YCW and shall provide YCW proof of such insurance upon request.
2.5    Electronic    Check    Processing Agreement. Merchant will not change its processor, add terminals, change its financial institution or bank account(s) or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without YCW's prior written consent. Any such change shall be a material breach of this Agreement.
2.6    Change of Name or Location. Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and YCW or change any of its places of business.
2.7    Estoppel Certificate. Merchant will at any time, and from time to time, upon at least one (1) day's prior notice from YCW to Merchant, execute, acknowledge and deliver to YCW and/or to any other person, person firm or corporation specified by YCW, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modification s) and stating the dates which the Purchased Amount or any portion thereof has been repaid.
2.8    Working    Capital    Funding. Merchant shall not further encumber the Receipts, without (i) written consent of YCW, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to YCW; or (iii) Merchant takes any action, fails to take any action, or offers any incentive— economic or otherwise—the

Owner 1 Initials: _____

Owner 2 Initials: _____

E-4

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 10 of 56

result of which will be to induce any customer or customers to pay for Merchant's services with any means other than checks that are settled through Processor. These protections are in addition to any other remedies available to YCW at law, in equity or otherwise pursuant to this Agreement. Protection 1: The full uncollected Purchase Amount plus all fees due under this Agreement and the attached Security Agreement become due and payable in full immediately. Protection 2. YCW may enforce the provisions of the Personal Guarantee of Performance against the Guarantor(s). Protection 3. Merchant shall, upon whether in the form of a purchase of, a loan against, collateral against or the sale or purchase of credits against, Receipts or future check sales, with any party other than YCW.

**2.9      Unencumbered Receipts.** Merchant has good, complete and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of YCW.

**2.10 Business Purpose.** Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

**2.11      Defaults under Other Contracts.** Merchant's execution of and/or performance under this Agreement will not cause or create an event of default by Merchant under any contract with another person or entity.

## III. EVENTS OF DEFAULT AND REMEDIES

**3.1      Events of Default.** The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Guarantor(s) prior to the Purchased Amount being paid to YCW; (d) Except for: (i) as a result of an Act of God, (ii) filing for protection under applicable bankruptcy law, (iii) an assignment for the benefit of the creditors, and (iv) similar protection; (e)

Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depositor y accounts without the prior written consent of YCW; (h) Merchant shall change its depositing account without the prior written consent of YCW; (i) Merchant shall perform any act that reduces the value of any Collateral granted under this Agreement; (j) Merchant shall default under any of the terms, covenants and conditions of any other agreement with YCW; or (k) Merchant shall fail to deposit its Receipts into the Account.

**3.2      Remedies.** In case any Event of Default occurs and is not waived pursuant to Section 4.4. hereof, YCW may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Personal Guarantee) or any other legal or equitable right or remedy. All rights, powers and remedies of YCW in connection with this Agreement may be exercised at any time by YCW after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

**3.3      Costs.** Merchant shall pay to YCW all reasonable costs associated with (a) a breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (b) the enforcement of YCW's remedies set forth herein, including but not limited to court costs and attorneys' fees calculated at twenty-five percent (25%) of the balance at the time of default as provided for in section 1.10 herein.

**3.4      Required Notifications.** Merchant is required to give YCW written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give YCW seven (7) days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

**4.1      Modifications; Agreements.** No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by both parties.

**4.2      Assignment.** YCW may assign, transfer or sell its rights to receive the

Purchased Amount or delegate its duties hereunder, either in whole or in part without prior notice to the Merchant.

**4.3      Notices.** All notices, requests, consent, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement and shall become effective only upon receipt.

**4.4      Waiver Remedies.** No failure on the part of YCW to exercise, and no delay in exercising, any right under this Agreement, shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5      Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of YCW which consent may be withheld in YCW's sole discretion.

**4.6      Governing Law, Venue and Jurisdiction.** This Agreement shall be governed by and construed exclusively in accordance with the laws of the State of New York, without regards to any applicable principles of conflicts of law. If there is any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, then such litigation shall only be instituted in any court sitting in New York State, (the "Acceptable Forums"). The parties agree that the Acceptable Forums are convenient, and submit to the jurisdiction of the Acceptable Forums and waive any and all objections to jurisdiction or venue. Should a proceeding be initiated in any other forum, the parties waive any right to oppose any motion or application made by either party to transfer such proceeding to an Acceptable Forum.

**4.7      Survival of Representation, etc.** All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.8      Severability.** In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision

Owner 1 Initials: _____

Owner 2 Initials: _____

contained herein shall not in any way be affected or impaired.

**4.9** _Entire Agreement._ Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and Security Agreement hereto embody the entire agreement between Merchant and YCW and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10** _JURY TRIAL WAIVER._ THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OF WHICH THIS AGREEMENT IS A PART OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11** _CLASS ACTION WAIVER._ THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY, AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AGAINST PUBLIC POLICY. TO THE EXTENT PERMITTED BY LAW OR, COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12** _Facsimile Acceptance._ Facsimile signatures and/or via Portable Digital Format (PDF) shall be deemed acceptable for all purposes.

**4.13** _Arbitration._ If YCW, Merchant or any Guarantor requests, the other parties agree to arbitrate all disputes and claims arising out of or relating to the Agreement. If YCW, Merchant or any Guarantor seeks to have a dispute settled by arbitration, that party must first send to the other party, by certified mail, a written Notice of Intent to Arbitrate. If YCW, Merchant or any Guarantor do not reach an agreement to resolve the claim within 30 days after the Notice is received, YCW, Merchant or any Guarantor may commence an arbitration proceeding with the American Arbitration Association ("AAA"), located in New York City. YCW will promptly reimburse Merchant or the Guarantor any arbitration filing fee; however, in the event that both Merchant and the Guarantor must pay filing fees, YCW will only reimburse Merchant's arbitration filing fee and, except as provided in the next sentence, YCW will pay all administration and arbitrator fees. If the arbitrator finds that either the substance of the claim raised by Merchant or the Guarantor or the relief sought by Merchant or the Guarantor is improper or not warranted, as measured by the standards set forth in Federal Rule of Civil Procedure 11(b), then YCW will pay these fees only if required by the AAA Rules. If the arbitrator grants relief to Merchant or the Guarantor that is equal to or greater than the value of what Merchant or the Guarantor has requested in the arbitration, YCW shall reimburse Merchant or the Guarantor for that person's reasonable attorneys' fees and expenses incurred for the arbitration. Merchant and the Guarantor agree that, by entering into this Agreement, they are waiving the right to trial by jury. PURCHASER, MERCHANT AND ANY GUARANTOR MAY BRING CLAIMS AGAINST ANY OTHER PARTY ONLY IN THEIR INDIVIDUAL CAPACITY, and not as a plaintiff or class member in any purported class or representative proceeding. Further, YCW, Merchant and any Guarantor agree that the arbitrator may not consolidate proceedings for more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific provision is found unenforceable, then the entirety of this arbitration clause shall be null and void. MERCHANT AND ANY GUARANTOR MAY OPT OUT OF THIS CLAUSE. To opt out of this Arbitration Clause, Merchant and/or Guarantor may send YCW a notice that the Merchant or Guarantor does not want this clause to apply to this Agreement. For any opt out to be effective, Merchant and/or Guarantor must send an opt out notice to the following address by registered mail, within 14 days after the date of this Agreement: 116 Nassau Street, Suite 804, New York, NY 10038

Owner 1 Initials: _____

Owner 2 Initials: _____

E-6

## YELLOWSTONE CAPITAL WEST, LLC - SECURITY AGREEMENT AND GUARANTY

Business Legal Name: INTERIOR COMMERCIAL INSTALLATION, INC.
D/B/A: INTERIOR COMMERCIAL INSTALLATION
Type of Entity: Corporation                              EIN #: 46-2799098
Physical Address: 3670 CONCORD AVE, BRENTWOOD, CA 94513
Mailing Address: 3670 CONCORD AVE, BRENTWOOD, CA 94513

### I.    SECURITY AGREEMENT

**Security Interest.** To secure Merchant's payment and performance obligations to YCW under the Merchant Agreement, Merchant hereby grants to YCW a security interest in all assets now owned, or hereafter acquired, including without limitation: (a) all accounts, including without limitation, all deposit accounts, accounts-receivable, and other receivables, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are defined by Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant; and (b) all proceeds, as that term is defined by Article 9 of the UCC ("a" and "b" collectively, the "Collateral").

**Cross-Collateral.** To secure Guarantor's payment and performance obligations to YCW under this Security Agreement and Guaranty (the "Agreement"), Guarantor hereby grants YCW an additional security interest in

_____

the ("Additional Collateral"). Guarantor(s) understands that YCW will have a security interest in the aforesaid Additional Collateral upon execution of this Agreement. Merchant and Guarantor each acknowledge and agree that any security interest granted to YCW under an agreement between Merchant or Guarantor and YCW (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement.

Merchant and Guarantor each agrees to execute any documents or take any action in connection with this Agreement as YCW deems necessary to perfect or maintain YCW's first priority security interest in the Collateral, the Additional Collateral and the Cross-Collateral, including the execution of any account control agreements. Merchant and Guarantor each hereby authorizes YCW to file any financing statements deemed necessary by YCW to perfect or maintain YCW's security interest, which financing statement may contain notification that Merchant and Guarantor have granted a negative pledge to YCW with respect to the Collateral, the Additional Collateral and the Cross- Collateral, and that any subsequent lienor may be tortiously interfering with YCW's rights. Merchant and Guarantor shall be liable for and YCW may charge and collect all costs and expenses, including but not limited to attorney's fees, which may be incurred by YCW in protecting, preserving and enforcing YCW's security interest and rights. Merchant further acknowledges that YCW may use another legal name and/or D/B/A when designating the Secured Party, when YCW files the above-referenced financing statement(s).

**Negative Pledge.** Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral, the Additional Collateral or the Cross-Collateral, as applicable.

**Consent to Enter Premises and Assign Lease.** YCW shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, YCW may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that YCW may enter into an agreement with Merchant's landlord giving YCW the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and (b) to assign Merchant's lease to another qualified Merchant capable of operating a business comparable to Merchant's at such premises.

**Remedies.** Upon any Event of Default, YCW may (i) pursue any remedy available at law (including those available under the provisions of the UCC), (ii) or in equity to collect, enforce, or satisfy any obligations then owing, whether by acceleration or otherwise, and (iii) exercise its rights under this Agreement.

### II.    GUARANTY

**Personal Guaranty of Performance.** The undersigned Guarantor(s) hereby guarantees to YCW, Merchant's performance of all of the representations, warranties, covenants made by Merchant in this Security Agreement and Guarantee, and the Merchant Agreement, as each agreement may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due (i) at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in this Agreement and the Merchant Agreement, and (ii) if any representation, warranty or covenant made by Merchant in this Agreement, or the Merchant Agreement, are false and/or misleading, in YCW's sole and absolute discretion.

**Guarantor Waivers.** In the event that Merchant fails to deliver the receivables purchased hereunder or perform any obligation when due under the Merchant Agreement, YCW may enforce its rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral, Additional Collateral or Cross-Collateral YCW may hold pursuant to this Agreement or any other guaranty.

Rev. 9.6.17

Owner 1 Initials: _____

Owner 2 Initials: _____

E-7

YCW does not have to notify Guarantor(s) of any of the following events and Guarantor(s) will not be released from its/their obligations under this Agreement if it is not notified of: (i) Merchant's failure to timely perform any obligation under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations; (iv) YCW's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to YCW. In addition, YCW may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement : (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to YCW; (ii) release Merchant from its obligations to YCW; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other. guarantee of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guarantee of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Merchant Amount plus any accrued but unpaid interest and Merchant's other obligations to YCW under the Merchant Agreement and this Agreement are satisfied in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that YCW must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

## IN WITNESS WHEREOF, the parties have executed this
## Security Agreement and Guaranty as of the date first written above:

FOR THE MERCHANT #1
By: _____

Name: JENS C JENSEN
Title: OWNER
SSN: 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

OWNER/GUARANTOR #1
By: _____

Name: JENS C JENSEN
SSN: 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

FOR THE MERCHANT #2
By: _____

Name: N/A
Title: N/A
SSN: N/A

OWNER/GUARANTOR #2
By: _____

Name: N/A
SSN: N/A

## AGREED AND ACCEPTED:

YELLOWSTONE CAPITAL WEST, LLC
By: _____

Name:
Title:

Rev. 9.6.17

E-8

# UCC FINANCING STATEMENT ADDITIONAL PARTY
FOLLOW INSTRUCTIONS

**18. NAME OF FIRST DEBTOR:** Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

INTERIOR COMMERCIAL INSTALLATION, INC.

OR

18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)          SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**19. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

19a. ORGANIZATION'S NAME: EURO SURFACING LLC

OR

| 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| JENSEN | JENS | CHRISTIAN | |

| 19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 3850 BALFOUR RD | BRENTWOOD | CA | 94513 | USA |

**20. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

20a. ORGANIZATION'S NAME

OR

| 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**21. ADDITIONAL DEBTOR'S NAME:** Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

21a. ORGANIZATION'S NAME

OR

| 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**22.** ☐ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

22a. ORGANIZATION'S NAME

OR

| 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**23.** ☐ ADDITIONAL SECURED PARTY'S NAME **or** ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

23a. ORGANIZATION'S NAME

OR

| 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| | | | |

| 23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**24. MISCELLANEOUS:**

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDITIONAL PARTY (Form UCC1AP) (Rev. 08/22/11)

Exhibit F-1

# UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

| | |
|---|---|
| **A. NAME & PHONE OF CONTACT AT FILER** (optional)<br>CSC    1-800-858-5294 | Initial Filing #: 187659685681<br>Initial Book #:<br>Initial Page #:<br>Initial Filing Date: 7/18/2018 |
| **B. E-MAIL CONTACT AT FILER** (optional)<br>SPRFiling@csoglobal.com | |
| **C. SEND ACKNOWLEDGMENT TO:** (Name and Address)<br>1494 66447<br>CSC<br>801 Adlai Stevenson Drive<br>Springfield, IL 62703<br>Filed in: California<br>(S.O.S.) | |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME INTERIOR COMMERCIAL INSTALLATION, INC. | | | | |
|---|---|---|---|---|
| OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1c. MAILING ADDRESS 3850 BALFOUR RD | CITY BRENTWOOD | STATE CA | POSTAL CODE 94513 | COUNTRY USA |

**2. DEBTOR'S NAME:** Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); If any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME INTERIOR COMMERCIAL INSTALLATION | | | | |
|---|---|---|---|---|
| OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2c. MAILING ADDRESS 3850 BALFOUR RD | CITY BRENTWOOD | STATE CA | POSTAL CODE 94513 | COUNTRY USA |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME Kalamata Capital Group | | | | |
|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3c. MAILING ADDRESS 80 Broad St | CITY New York | STATE NY | POSTAL CODE 10004 | COUNTRY USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
Receivables - All assets now owned or hereafter acquired and wherever located, including but not limited to, the following subcategories of assets: a. Accounts, including but not limited to, credit card receivables; b. Chattel Paper; c. Inventory; d. Equipment; e. Instruments, including but not limited to, Promissory Notes; f. Investment Property; g. Documents; h. Deposit Accounts; i. Letter of Credit Rights; j. General Intangibles; k. Supporting Obligations; and l. Proceeds and Products of the foregoing. NOTICE PURSUANT TO AN AGREEMENT BETWEEN DEBTOR AND SECURED PARTY, DEBTOR HAS AGREED NOT TO FURTHER ENCUMBER THE COLLATERAL DESCRIBED HEREIN. THE FURTHER ENCUMBERING OF WHICH MAY CONSTITUTE THE TORTIOUS INTERFERENCE WITH THE SECURED PARTY'S RIGHT BY SUCH ENCUMBRANCES IN THE EVENT THAT ANY ENTITY IS GRANTED A SECURITY INTEREST IN DEBTOR'S ACCOUNTS, CHATTEL PAPER OR GENERAL INTANGIBLES CONTRARY TO THE ABOVE, THE SECURED PARTY ASSERTS A CLAIM TO ANY PROCEEDS THEREOF RECEIVED BY SUCH ENTITY.

**5. Check only if applicable and check only one box:** Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and instructions) ☐ being administered by a Decedent's Personal Representative

**6a. Check only if applicable and check only one box:**
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility
**6b. Check only if applicable and check only one box**
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
1494 66447

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)
This document was auto-generated from data received from the California Department of State

F-2



# TERMS AND CONDITIONS OF MERCHANT AGREEMENT

## I. TERMS OF ENROLLMENT IN PROGRAM

**1.1 Merchant Deposit Agreement and Processor**
Merchant shall (A) execute an agreement acceptable to KCG with a Bank acceptable to KCG to obtain electronic fund transfer services for the Account, and (B) execute an agreement acceptable to KCG with a credit and debit card processor (the "Processor") instructing the Processor to deposit all Receipts into the Account. Merchant shall provide KCG and/or its authorized agent(s) with all of the information, authorizations and passwords necessary for verifying Merchant's receivables, receipts, deposits and withdrawals into and from the Account. Merchant hereby authorizes KCG and/or its agent(s) to withdraw from the Account via ACH debit the amounts owed to KCG for the receipts as specified herein and to pay such amounts to KCG. These authorizations apply not only to the approved Account but also to any subsequent or alternate account used by the Merchant for these deposits, whether preapproved by KCG or not. This additional authorization is not a waiver of KCG's entitlement to declare this Agreement breached by Merchant as a result of its usage of an account which KCG did not first pre-approve in writing prior to Merchant's usage thereof. The aforementioned authorizations shall be irrevocable without the written consent of KCG.

**1.2 Term of Agreement**
This Agreement shall remain in full force and effect until the entire Purchased Amount and any other amounts due are received by KCG as per the terms of this Agreement.

**1.3 Future Purchase of Increments**
Subject to the terms of this Agreement, KCG offers to purchase additional Receipts in the "Increments" stated in on Page 1 of this Agreement, if any. KCG reserves the right to delay or rescind the offer to purchase any Increment or any additional receipts, in its sole and absolute discretion.

**1.4 Adjustments to the Specific Amount**
The Specific Amount is intended to represent the Specified Percentage of Merchant's Receipts each calendar month. At any time, KCG may adjust the Specific Amount so that the amount received by KCG in the future more closely represents the Specified Percentage. Also, once each calendar month Merchant may request that KCG reconcile Merchant's actual receipts and adjust the Specific Amount so that the amount received by KCG in the future more closely represents the Specified Percentage. Upon receipt of a written reconciliation request from Merchant, KCG may request any and all information from Merchant that KCG, in its sole judgment, believes is necessary to accurately reconcile the amount KCG has received from Merchant with the actual Specified Percentage. KCG shall not be required to adjust the Specific Amount until such time as it has received all such requested information.

**1.5 Financial Condition**
Merchant and Guarantor(s) (as hereinafter defined and limited) authorize KCG and its agents to investigate their financial responsibility and history, and will provide to KCG any authorizations, bank or financial statements, tax returns, etc., as KCG deems necessary in its sole and absolute discretion prior to or at any time after execution of this Agreement. A photocopy of this authorization will be deemed as acceptable as an authorization for release of financial and credit information. KCG is authorized to update such information and financial and credit profiles from time to time as it deems appropriate.

**1.6 Transactional History**
Merchant authorizes all of its banks, brokers and processors to provide KCG with Merchant's banking, brokerage and/or processing history to determine qualification or continuation in this program and for collections purposes. Merchant shall provide KCG with copies of any documents related to Merchant's card processing activity or financial and banking affairs within five days after a request from KCG.

**1.7 Indemnification**
Merchant and Guarantor(s) jointly and severally indemnify and hold harmless Processor, its officers, directors and shareholders against all losses, damages, claims, liabilities and expenses (including reasonable attorney's fees) incurred by Processor resulting from (a) claims asserted by KCG for monies owed to KCG from Merchant and (b) actions taken by Processor in reliance upon any fraudulent, misleading or deceptive information or instructions provided by KCG.

**1.8 No Liability**
In no event will KCG be liable for any claims asserted by Merchant or Guarantors under any legal theory for lost profits, lost revenues, lost business opportunities, exemplary, punitive, special, incidental, indirect or consequential damages, each of which is waived by both Merchant and Guarantor(s). In the event these claims are nonetheless raised, Merchant and Guarantors will be jointly liable for all of KCG's attorney's fees and expenses resulting therefrom.

**1.9 Reliance on Terms**
Section 1.1, 1.6, 1.7, 1.8 and 2.5 of this Agreement are agreed to for the benefit of Merchant, KCG, Processor, and Merchant's bank and notwithstanding the fact that Processor and the bank are not a party of this Agreement, Processor and the bank may rely upon their terms and raise them as a defense in any action.

**1.10 Sale of Receipts**
Merchant and KCG agree that the Purchase Price under this Agreement is in exchange for the Purchased Amount, and that such Purchase Price is not intended to be, nor shall it be construed as a loan from KCG to Merchant. Merchant agrees that the Purchase Price is in exchange for the Receipts pursuant to this Agreement, and that it equals the fair market value of such Receipts. KCG has purchased and shall own all the Receipts described in this Agreement up to the full Purchased Amount as the Receipts are created. Payments made to KCG in respect to the full amount of the Receipts shall be conditioned upon Merchant's sale of products and services, and the payment therefore by Merchant's customers. In no event shall the aggregate of all amounts or any portion thereof be deemed as interest hereunder, and in the event it is found to be interest despite the parties hereto specifically representing that it is NOT interest, it shall be found that no sum charged or collected hereunder shall exceed the highest rate permissible at law. In the event that a court nonetheless determines that KCG has charged or received interest hereunder in excess of the highest applicable rate, the rate in effect hereunder shall automatically be reduced to the maximum rate permitted by applicable law and KCG shall promptly refund to Merchant any interest received by KCG in excess of the maximum lawful rate, it being intended that Merchant not pay or contract to pay, and that KCG not receive or contract to receive, directly or indirectly in any manner whatsoever, interest in excess of that which may be paid by Merchant under applicable law. As a result thereof, Merchant knowingly and willingly waives the defense of Usury in any action or proceeding.

**1.11 Power of Attorney**
Merchant irrevocably appoints KCG as its agent and attorney-in-fact with full authority to take any action or execute any instrument or document to settle all obligations due to KCG from Processor, or in the case of a violation by Merchant of Section 1or the occurrence of an Event of

F-3

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 17 of 56



# KALAMATA CAPITAL GROUP
80 BROAD STREET 12th FLOOR
NEW YORK, NY
10004

## MERCHANT AGREEMENT

Agreement dated July 18, 2018 _____ between Kalamata Capital Group ("KCG") and the Merchant listed below ("MERCHANT")
(Month) (Day) (Year)

Business (Merchant) Legal Name: INTERIOR COMMERCIAL INSTALLATION, INC.   State of Inc. / Org. : CA

Doing Business As: INTERIOR COMMERCIAL INSTALLATION   Federal Tax ID (EIN): 46-2799098

Entity Type: Corporation (✓) Limited Liability Company ( ) Sole Proprietorship ( ) Other ( )

Business Address: 3850 BALFOUR RD   City: BRENTWOOD   State: CA   Zip: 94513

Mailing Address: SAME AS ABOVE   City: _____ State: _____ Zip: _____

---

**Purchase Price:** $ 165,000.00

**Specified Percentage:** 15 %  **Specific:** DAILY   **Amount:** $ 1,562.00

**Purchased Amount:** $ 234,300.00

---

## PURCHASE AND SALE OF FUTURE RECEIVABLES

Merchant hereby sells, assigns and transfers to KCG (making KCG the absolute owner) in consideration of the "Purchase Price" specified below, the "Specified Percentage" of all of Merchant's future accounts, contract rights and other entitlements arising from or relating to the payment of monies from Merchant's customers' and/or other third party payors (the "Receipts" defined as all payments made by cash, check, electronic transfer or other form of monetary payment in the ordinary course of the Merchant's business), for the payments due to Merchant as a result of Merchant's sale of goods or services (the "Transactions") until the amount specified below (the "Purchased Amount") has been delivered by or on behalf of Merchant to KCG.

**Merchant may use the Purchase Price solely for business purposes and not for personal, family or household purposes.** Merchant is selling a portion of a future revenue stream to KCG at a discount, not borrowing money from KCG.

There is no interest rate or payment schedule and no time period during which the Purchased Amount must be collected by KCG. Merchant going bankrupt or going out of business, in and of itself, does not constitute a breach of this Agreement. KCG is entering into this Agreement knowing the risks that Merchant's business may slow down or fail, and KCG assumes these risks based on Merchant's representations, warranties and covenants in this Agreement, which are designed to give KCG a reasonable and fair opportunity to receive the benefit of its bargain.

KCG will debit the Specific Amount each business day from only one depositing bank account, which account must be acceptable to, and pre-approved by, KCG (the "Account") into which Merchant and Merchant's customers shall remit the Receipts from each Transaction, until such time as KCG receives payment in full of the Purchased Amount. If Merchant's bank is closed on a business day, then KCG will debit the Specific Amount for that day on

the next business day in addition to the regularly scheduled debit. Merchant hereby authorizes KCG to ACH debit the Specific Amount from the Account on a daily basis. KCG's payment of the Purchase Price shall be deemed the acceptance and performance by KCG of this Agreement. Merchant understands that it is responsible for ensuring that the Specific Amount to be debited by KCG remains in the Account and will be held responsible for any fees incurred by KCG resulting from a rejected ACH attempt or an Event of Default. KCG is not responsible for any overdrafts or rejected transactions that may result from KCG's ACH debiting the Specific Amount under the terms of this Agreement. Notwithstanding anything to the contrary in this Agreement or any other agreement between KCG and Merchant, upon the occurrence of an Event of Default under Section 3 of the MERCHANT AGREEMENT TERMS AND CONDITIONS the Specified Percentage shall equal 100%. A list of all fees applicable under this Agreement is contained in Appendix A.

**THE MERCHANT AGREEMENT "TERMS AND CONDITIONS", THE "SECURITY AGREEMENT AND GUARANTY" AND THE "ADMINISTRATIVE FORM HEREOF, ARE ALL HEREBY INCORPORATED IN AND MADE A PART OF THIS MERCHANT AGREEMENT.**

**FOR THE MERCHANT (#1)** By: JENS CHRISTIAN JENSEN _____ *Jens Christian Jensen*
(Print Name and Title)   (Signature)

**FOR THE MERCHANT (#2)** By: _____ _____
(Print Name and Title)   (Signature)

**BY OWNER (#1)** By: JENS CHRISTIAN JENSEN _____ *Jens Christian Jensen*
(Print Name and Title)   (Signature)

**BY OWNER (#2)** By: _____ _____
(Print Name and Title)   (Signature)

F-4

Case: 18-42874   Doc# 3   Filed: 12/07/18   Entered: 12/07/18 12:48:10   Page 18 of 56



properties and to conduct the business in which it is presently engaged and/or will engage in hereafter.

### 2.3 Authorization
Merchant, and the person(s) signing this Agreement on behalf of Merchant, have full power and authority to incur and perform the obligations under this Agreement, all of which have been duly authorized.

### 2.4 Insurance
Merchant will maintain business interruption insurance naming KCG as loss payee and additional insured in amounts and against risks as are satisfactory to KCG and shall provide KCG proof of such insurance upon request.

### 2.5 Electronic Check Processing Agreement
Merchant will not change its Processor, add terminals, change its financial institution or bank account(s)or take any other action that could have any adverse effect upon Merchant's obligations under this Agreement, without KCG's prior written consent. Any such changes shall be a material breach of this Agreement.

### 2.6 Change of Name or Location
Merchant will not conduct Merchant's businesses under any name other than as disclosed to the Processor and KCG, nor shall Merchant change any of its places of business without prior written consent by KCG.

### 2.7 Daily Batch Out
Merchant will batch out receipts with the Processor on a daily basis.

### 2.8 Estoppel Certificate
Merchant will at every and all times, and from time to time, upon at least one (1) day's prior notice from KCG to Merchant, execute, acknowledge and deliver to KCG and/or to any other person, firm or corporation specified by KCG, a statement certifying that this Agreement is unmodified and in full force and effect (or, if there have been modifications, that the same is in full force and effect as modified and stating the modifications) and stating the dates which the Purchased Amount or any portion thereof has been repaid.

### 2.9 No Bankruptcy
As of the date of this Agreement, Merchant is not insolvent and does not contemplate filing for bankruptcy in the next six months and has not consulted with a bankruptcy attorney or filed any petition for bankruptcy protection under Title 11 of the United States Code and there has been no involuntary petition brought or pending against Merchant. Merchant further warrants that it does not anticipate filing any such bankruptcy petition and it does not anticipate that an involuntary petition will be filed against it.

### 2.10 Unencumbered Receipts
Merchant has good, complete, unencumbered and marketable title to all Receipts, free and clear of any and all liabilities, liens, claims, changes, restrictions, conditions, options, rights, mortgages, security interests, equities, pledges and encumbrances of any kind or nature whatsoever or any other rights or interests that may be inconsistent with the transactions contemplated with, or adverse to the interests of KCG.

### 2.11 Business Purpose
Merchant is a valid business in good standing under the laws of the jurisdictions in which it is organized and/or operates, and Merchant is entering into this Agreement for business purposes and not as a consumer for personal, family or household purposes.

### 2.12 Defaults under Other Contracts
Merchant's execution of, and/or performance under this Agreement, will not cause or create an event of default by Merchant under any contract with another person or entity.

### 2.13 Good Faith
Merchant and Guarantors hereby affirm that Merchant is receiving the Purchase Price and selling KCG the Purchased Amount in good faith and will use the Purchase Price funds to maintain and grow Merchant's business.

## III. EVENTS OF DEFAULT AND REMEDIES

### 3.1 Events of Default
The occurrence of any of the following events shall constitute an "Event of Default" hereunder: (a) Merchant or Guarantor shall violate any term or covenant in this Agreement; (b) Any representation or warranty by Merchant in this Agreement shall prove to have been incorrect, false or misleading in any material respect when made; (c) the sending of notice of termination by Merchant; (d) the Merchant fails to give KCG 24 hours advance notice that there will be insufficient funds in the account such that the ACH of the specific daily amount will not be honored by Merchant's bank, and Merchant fails to supply all requested documentation and allow for daily monitoring of its bank account; (e) Merchant shall transfer or sell all or substantially all of its assets; (f) Merchant shall make or send notice of any intended bulk sale or transfer by Merchant; (g) Merchant shall use multiple depository accounts without the prior written consent of KCG (h) Merchant shall encumber its receipts or obtain any additional financing, loan, or merchant cash advance after the date KCG remits the Purchase Price (i) Merchant shall breach the negative pledge in the Security Agreement (j) Merchant shall change its depositing account without the prior written consent of KCG; or (k) Merchant shall close its depositing account used for ACH debits without the prior written consent of KCG (l) Merchant's bank returns a code other than NSF cutting KCG from its collections (m) Merchant shall default under any of the terms, covenants and conditions of any other agreement with KCG.

### 3.2 Personal Guaranty
In the Event of a Default, KCG will enforce its rights against the Guarantors of this transaction. Said Guarantors will be jointly and severally liable to KCG for all of KCG's losses and damages, in additional to all costs and expenses and legal fees associated with such enforcement.

### 3.3 Remedies
In case any Event of Default occurs and is not waived pursuant to Section 4.4, hereof, KCG may proceed to protect and enforce its rights or remedies by suit in equity or by action at law, or both, whether for the specific performance of any covenant, agreement or other provision contained herein, or to enforce the discharge of Merchant's obligations hereunder (including the Guaranty) or any other legal or equitable right or remedy. All rights, powers and remedies of KCG in connection with this Agreement may be exercised at any time by KCG after the occurrence of an Event of Default, are cumulative and not exclusive, and shall be in addition to any other rights, powers or remedies provided by law or equity.

### 3.4 Costs
Merchant shall pay to KCG all reasonable costs associated with (a) a Event or Default, (b) breach by Merchant of the Covenants in this Agreement and the enforcement thereof, and (c) the enforcement of KCG 's remedies set forth in this Agreement, including but not limited to court costs and attorneys' fees.

### 3.5 Required Notifications
Merchant is required to give KCG written notice within 24 hours of any filing under Title 11 of the United States Code. Merchant is required to give KCG seven days' written notice prior to the closing of any sale of all or substantially all of the Merchant's assets or stock.

## IV. MISCELLANEOUS

### 4.1 Modifications; Agreements
No modification, amendment, waiver or consent of any provision of this Agreement shall be effective unless the same shall be in writing and signed by KCG.

F-5
Case: 18-42874   Doc# 3   Filed: 12/07/18   Entered: 12/07/18 12:48:10   Page 19 of 56



# KCG
## KALAMATA CAPITAL GROUP

Default under Section 3 hereof, including without limitation (i) to obtain and adjust insurance; (ii) to collect monies due or to become due under or in respect of any of the Collateral; (iii) to receive, endorse and collect any checks, notes, drafts, instruments, documents or chattel paper in connection with clause (i) or clause (ii) above; (iv) to sign Merchant's name on any invoice, bill of lading, or assignment directing customers or account debtors to make payment directly to KCG; and (v) to contact Merchant's banks and financial institutions using Merchant and Guarantor(s) personal information to verify the existence of an account and obtain account balances (vi) to file any claims or take any action or institute any proceeding which KCG may deem necessary for the collection of any of the unpaid Purchased Amount from the Collateral, or otherwise to enforce its rights with respect to payment of the Purchased Amount. In connection therewith, all costs, expenses and fees, including legal fees, shall be payable by Merchant.

**1.12 Protections against Default**

The following Protections 1 through 8 may be invoked by KCG immediately and without notice to Merchant in the event: (a) Merchant takes any action to discourage the use of electronic check processing that are settled through Processor, or permits any event to occur that could have an adverse effect on the use, acceptance, or authorization of checks or other payments or deposits for the purchase of Merchant's services and products including but not limited to direct deposit of any checks into a bank account without scanning into the KCG electronic check processor; (b) Merchant changes its arrangements with Processor or the Bank in any way that is adverse or unacceptable to KCG; (c) Merchant changes the electronic check processor through which the Receipts are settled from Processor to another electronic check processor, or permits any event to occur that could cause diversion of any of Merchant's check or deposit transactions to another processor; (d) Merchant intentionally interrupts the operation of this business transfers, moves, sells, disposes, or otherwise conveys its business and/or assets without (i) the express prior written consent of KCG, and (ii) the written agreement of any purchaser or transferee to the assumption of all of Merchant's obligations under this Agreement pursuant to documentation satisfactory to KCG; (e) Merchant takes any action, fails to take any action, or offers any incentive—economic or otherwise—the result of which will be to induce any customer or customers to pay for Merchant's services with any means other than payments, checks or deposits that are settled through Processor; or (f) Merchant fails to provide KCG with copies of any documents related to Merchant's card processing activity of financial and banking affairs within five days after a request from KCG. These protections are in addition to any other remedies available to KCG at law, in equity or otherwise pursuant to this Agreement. **Protection 1:** The full uncollected Purchased Amount plus all fees (including reasonable attorney's fees) due under this Agreement and the attached Security Agreement become due and payable in full immediately. **Protection 2:** KCG may enforce the provisions of the Personal Guaranty of Performance against the Guarantor(s). **Protection 3:** Merchant hereby authorizes KCG to execute in the name of the Merchant a Confession of Judgment in favor of KCG in the amount of Purchased Amount stated in the Agreement. Upon an Event of Default, KCG may enter that Confession of Judgment as a Judgment with the Clerk of any Court and execute thereon. **Protection 4:** KCG may enforce its security interest in the Collateral. **Protection 5:** The entire Purchased Amount and all fee (including reasonable attorney's fees) shall become immediately payable to KCG from Merchant. **Protection 6:** KCG may proceed to protect and enforce its right and remedies by lawsuit. In any such lawsuit, if KCG recovers a Judgment against Merchant, Merchant shall be liable for all of KCG's costs of the lawsuit, including but not limited to all reasonable attorneys' fees and court costs. **Protection 7:** This Agreement shall be deemed

Merchant's Assignment of Merchant's Lease of Merchant's business premises to KCG. Upon breach of any provision in this Agreement, KCG may exercise its rights under this Assignment of Lease without prior Notice to Merchant. **Protection 8:** KCG may debit Merchant's depository accounts wherever situated by means of ACH debit or facsimile signature on a computer-generated check drawn on Merchant's bank account or otherwise for all sums due to KCG.

**1.13 Protection of Information**

Merchant and each person signing this Agreement on behalf of Merchant and/or as Owner or Guarantor, in respect of himself or herself personally, authorizes KCG to disclose information concerning Merchant's and each Owner's and each Guarantor's credit standing (including credit bureau reports that KCG obtains) and business conduct only to agents, affiliates, subsidiaries, and credit reporting bureaus. Merchant and each Owner and each Guarantor hereby and each waives to the maximum extent permitted by law any claim for damages against KCG or any of its affiliates relating to any (i)investigation undertaken by or on behalf of KCG as permitted by this Agreement or (ii) disclosure of information as permitted by this Agreement.

**1.14 Confidentiality**

Merchant understands and agrees that the terms and conditions of the products and services offered by KCG, including this Agreement and any other KCG documents (collectively, "Confidential Information") are proprietary and confidential information of KCG. Accordingly, unless disclosure is required by law or court order, Merchant shall not disclose Confidential Information of KCG to any person other than an attorney, accountant, financial advisor or employee of Merchant who needs to know such information for the purpose of advising Merchant ("Advisor"), provided such Advisor uses such information solely for the purpose of advising Merchant and first agrees in writing to be bound by the terms of this section. A breach hereof entitles KCG to not only damages and reasonable attorney's fees but also to both a Temporary Restraining Order and a Preliminary Injunction without Bond or Security.

**1.15 Publicity**

Merchant and each of Merchant's Owners and all Guarantors hereto all hereby authorizes KCG to use its, his or her name in listings of clients and in advertising and marketing materials.

**1.16 D/B/A's**

Merchant hereby acknowledges and agrees that KCG may be using "doing business as" or "d/b/a" names in connection with various matters relating to the transaction between KCG and Merchant, including the filing of UCC-1 financing statements and other notices or filings.

## II. REPRESENTATIONS, WARRANTIES AND COVENANTS

Merchant represents warrants and covenants that, as of this date and during the term of this Agreement:

**2.1 Financial Condition and Financial Information**

Merchant's and Guarantors' bank and financial statements, copies of which have been furnished to KCG, and future statements which will be furnished hereafter at the discretion of KCG, fairly represent the financial condition of Merchant at such dates, and since those dates there has been no material adverse changes, financial or otherwise, in such condition, operation or ownership of Merchant. Merchant and Guarantors have a continuing, affirmative obligation to advise KCG of any material adverse change in their financial condition, operation or ownership. KCG may request statements at any time during the performance of this Agreement and the Merchant and Guarantors shall provide them to KCG within five business days after request from KCG. Merchant's or Guarantors' failure to do so is a material breach of this Agreement.

**2.2 Governmental Approvals**

Merchant is in compliance and shall comply with all laws and has valid permits, authorizations and licenses to own, operate and lease its



Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 20 of 56



# KCG
## KALAMATA CAPITAL GROUP

### SECURITY AGREEMENT AND GUARANTY

Business (Merchant) Legal Name: INTERIOR COMMERCIAL INSTALLATION, INC.    Federal Tax ID (EIN): 46-2799098

Doing Business As: INTERIOR COMMERCIAL INSTALLATION

Business Address: 3850 BALFOUR RD    City: BRENTWOOD    State: CA    Zip: 94513

Additional Guarantor(s):

EURO SURFACES INC / EURO SURFACING LLC / CJ INSTALLATIONS INC. / INTEROCEAN STEAMSHIP CORPORATION

### SECURITY AGREEMENT

**Security Interest**
This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to KCG a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to KCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to KCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover KCG's entitlements under this Agreement, KCG is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of KCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, KCG or an affiliate of KCG. KCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by KCG without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. KCG shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as

amended from time to time, KCG has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, KCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from KCG written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and KCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by KCG. Merchant and Guarantor(s) agree(s) to execute and deliver to KCG such instruments and documents KCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. KCG is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to KCG under any other agreement between Merchant or Guarantor(s) and KCG (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as KCG deems necessary to perfect or maintain KCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes KCG to file any financing statements deemed

necessary by KCG to perfect or maintain KCG's security interest. Merchant and Guarantor(s) shall be liable for, and KCG may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by KCG in protecting, preserving and enforcing KCG's security interest and rights.

**Negative Pledge**
Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**
KCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, KCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that KCG may enter into an agreement with Merchant's landlord giving KCG the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**
Upon any Event of Default, KCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to KCG, whether by acceleration or otherwise.

Initial(s): _KCJ_

F-7

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 21 of 56



## KCG
### KALAMATA CAPITAL GROUP

**4.2 Assignment**
KCG may assign, transfer or sell its rights to receive the Purchased Amount or delegate its duties hereunder, either in whole or in part.

**4.3 Notices**
All notices, requests, consents, demands and other communications hereunder shall be delivered by certified mail, return receipt requested, to the respective parties to this Agreement at the addresses set forth in this Agreement. Notices to KCG shall become effective only upon receipt by KCG. Notices to Merchant shall become effective three days after mailing.

**4.4 Waiver Remedies**
No failure on the part of KCG to exercise, and no delay in exercising any right under this Agreement shall operate as a waiver thereof, nor shall any single or partial exercise of any right under this Agreement preclude any other or further exercise thereof or the exercise of any other right. The remedies provided hereunder are cumulative and not exclusive of any remedies provided by law or equity.

**4.5 Binding Effect; Governing Law, Venue and Jurisdiction**
This Agreement shall be binding upon and inure to the benefit of Merchant, KCG and their respective successors and assigns, except that Merchant shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of KCG which consent may be withheld in KCG's sole discretion. KCG reserves the rights to assign this Agreement with or without prior written notice to Merchant. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regards to any applicable principals of conflicts of law. Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if KCG so elects, be instituted in any court sitting in New York, (the "Acceptable Forums"). Merchant agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, Merchant waives any right to oppose any motion or application made by KCG to transfer such proceeding to an Acceptable Forum. ADDITIONALLY, MERCHANT AGREES THAT ANY SUMMONS AND/OR COMPLAINT OR OTHER PROCESS TO COMMENCE ANY LITIGATION BY KCG WILL BE PROPERLY SERVED IF MAILED BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO THE MAILING ADDRESS(ES) LISTED ON PAGE 1 OF THIS AGREEMENT.

**4.6 Survival of Representation, etc.**
All representations, warranties and covenants herein shall survive the execution and delivery of this Agreement and shall continue in full force until all obligations under this Agreement shall have been satisfied in full and this Agreement shall have terminated.

**4.7 Interpretation**
All Parties hereto have reviewed this Agreement with attorney of their own choosing and have relied only on their own attorneys' guidance and advice. No construction determinations shall be made against either Party hereto as drafter.

**4.8 Severability**
In case any of the provisions in this Agreement is found to be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of any other provision contained herein shall not in any way be affected or impaired.

**4.9 Entire Agreement**
Any provision hereof prohibited by law shall be ineffective only to the extent of such prohibition without invalidating the remaining provisions hereof. This Agreement and the Security Agreement and Guaranty hereto embody the entire agreement between Merchant and KCG and supersede all prior agreements and understandings relating to the subject matter hereof.

**4.10 JURY TRIAL WAIVER**
THE PARTIES HERETO WAIVE TRIAL BY JURY IN ANY COURT IN ANY SUIT, ACTION OR PROCEEDING ON ANY MATTER ARISING IN CONNECTION WITH OR IN ANY WAY RELATED TO THE TRANSACTIONS OR THE ENFORCEMENT HEREOF. THE PARTIES HERETO ACKNOWLEDGE THAT EACH MAKES THIS WAIVER KNOWINGLY, WILLINGLY AND VOLUNTARILY AND WITHOUT DURESS, AND ONLY AFTER EXTENSIVE CONSIDERATION OF THE RAMIFICATIONS OF THIS WAIVER WITH THEIR ATTORNEYS.

**4.11 CLASS ACTION WAIVER**
THE PARTIES HERETO WAIVE ANY RIGHT TO ASSERT ANY CLAIMS AGAINST THE OTHER PARTY AS A REPRESENTATIVE OR MEMBER IN ANY CLASS OR REPRESENTATIVE ACTION, EXCEPT WHERE SUCH WAIVER IS PROHIBITED BY LAW AS AGAINST PUBLIC POLICY. TO THE EXTENT EITHER PARTY IS PERMITTED BY LAW OR COURT OF LAW TO PROCEED WITH A CLASS OR REPRESENTATIVE ACTION AGAINST THE OTHER, THE PARTIES HEREBY AGREE THAT: (1) THE PREVAILING PARTY SHALL NOT BE ENTITLED TO RECOVER ATTORNEYS' FEES OR COSTS ASSOCIATED WITH PURSUING THE CLASS OR REPRESENTATIVE ACTION (NOT WITHSTANDING ANY OTHER PROVISION IN THIS AGREEMENT); AND (2) THE PARTY WHO INITIATES OR PARTICIPATES AS A MEMBER OF THE CLASS WILL NOT SUBMIT A CLAIM OR OTHERWISE PARTICIPATE IN ANY RECOVERY SECURED THROUGH THE CLASS OR REPRESENTATIVE ACTION.

**4.12 Facsimile & Digital Acceptance**
Facsimile signatures and digital signatures hereon shall be deemed acceptable for all purposes.

Initial(s): _____

F - 8

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 22 of 56



## KCG
### KALAMATA CAPITAL GROUP
**GUARANTY OF PERFORMANCE**

THE TERMS, DEFINITIONS, CONDITIONS AND INFORMATION SET FORTH IN THE "MERCHANT AGREEMENT", INCLUDING THE "TERMS AND CONDITIONS", ARE HEREBY INCORPORATED IN AND MADE A PART OF THIS SECURITY AGREEMENT AND GUARANTY. CAPITALIZED TERMS NOT DEFINED IN THIS SECURITY AGREEMENT AND GUARANTY, SHALL HAVE THE MEANING SET FORTH IN THE MERCHANT AGREEMENT, INCLUDING THE TERMS AND CONDITIONS.

As an additional inducement for KCG to enter into this Agreement, the undersigned Guarantor(s) hereby provides KCG with this Guaranty. Guarantor(s) will not be personally liable for any amount due under this Agreement unless Merchant commits an Event of Default pursuant to Paragraph 3.1 of this Agreement. Each Guarantor shall be jointly and severally liable for all amounts owed to KCG in the Event of Default. Guarantor(s) guarantee Merchant's good faith, truthfulness and performance of all of the representations, warranties, covenants made by Merchant in this Agreement as each may be renewed, amended, extended or otherwise modified (the "Guaranteed Obligations"). Guarantor's obligations are due at the time of any breach by Merchant of any representation, warranty, or covenant made by Merchant in the Agreement.

**Guarantor Waivers**
In the event of a breach of the above, KCG may seek recovery from Guarantors for all of KCG's losses and damages by enforcement of KCG's rights under this Agreement without first seeking to obtain payment from Merchant, any other guarantor, or any Collateral or Additional Collateral KCG may hold pursuant to this Agreement or any other guaranty.

KCG does not have to notify Guarantor of any of the following events and Guarantor will not be released from its obligations under this Agreement if it is not notified of: (i) Merchant's failure to pay timely any amount required under the Merchant Agreement; (ii) any adverse change in Merchant's financial condition or business; (iii) any sale or other disposition of any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; (iv) KCG's acceptance of this Agreement; and (v) any renewal, extension or other modification of the Merchant Agreement or Merchant's other obligations to KCG. In addition, KCG may take any of the following actions without releasing Guarantor from any of its obligations under this Agreement: (i) renew, extend or otherwise modify the Merchant Agreement or Merchant's other obligations to KCG; (ii) release Merchant from its obligations to KCG; (iii) sell, release, impair, waive or otherwise fail to realize upon any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations; and (iv) foreclose on any collateral securing the Guaranteed Obligations or any other guaranty of the Guaranteed Obligations in a manner that impairs or precludes the right of Guarantor to obtain reimbursement for payment under this Agreement. Until the Purchased Amount and Merchant's other obligations to KCG under the Merchant Agreement and this Agreement are paid in full, Guarantor shall not seek reimbursement from Merchant or any other guarantor for any amounts paid by it under this Agreement. Guarantor permanently waives and shall not seek to exercise any of the following rights that it may have against Merchant, any other guarantor, or any collateral provided by Merchant or any other guarantor, for any amounts paid by it, or acts performed by it, under this Agreement: (i) subrogation; (ii) reimbursement; (iii) performance; (iv) indemnification; or (v) contribution. In the event that KCG must return any amount paid by Merchant or any other guarantor of the Guaranteed Obligations because that person has become subject to a proceeding under the United States Bankruptcy Code or any similar law, Guarantor's obligations under this Agreement shall include that amount.

**Guarantor Acknowledgement**
Guarantor acknowledges that: (i) He/She is bound by the Class Action Waiver provision in the Merchant Agreement Terms and Conditions; (ii) He/She understands the seriousness of the provisions of this Agreement; (ii) He/She has had a full opportunity to consult with counsel of his/her choice; and (iii) He/She has consulted with counsel of its choice or has decided not to avail himself/herself of that opportunity.

**FOR THE MERCHANT (#1)**   By: JENS CHRISTIAN JENSEN     _Jens Christian Jensen_
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

**FOR THE MERCHANT (#2)**   By: _____
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

**BY OWNER (#1)**   By: JENS CHRISTIAN JENSEN     _Jens Christian Jensen_
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

**BY OWNER (#2)**   By: _____
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

**FOR THE GUARANTOR(S) (#1)**   By: JENS CHRISTIAN JENSEN     _Jens Christian Jensen_
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

**FOR THE GUARANTOR(S) (#2)**   By: _____
(Print Name and Title)              (Signature)
SSN# _____   Driver's License _____

F-9

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 23 of 56



## KCG
## KALAMATA CAPITAL GROUP
### SECURITY AGREEMENT AND GUARANTY

Business (Merchant) Legal Name: INTERIOR COMMERCIAL INSTALLATION, INC.    Federal Tax ID (EIN): 46-2799098

Doing Business As: INTERIOR COMMERCIAL INSTALLATION

Business Address: 3850 BALFOUR RD    City: BRENTWOOD    State: CA    Zip: 94513

**Additional Guarantor(s):**

EURO SURFACES INC / EURO SURFACING LLC / CJ INSTALLATIONS INC. / INTEROCEAN STEAMSHIP CORPORATION

### SECURITY AGREEMENT

**Security Interest**
This Agreement will constitute a security agreement under the Uniform Commercial Code. Merchant and Guarantor(s) grants to KCG a security interest in and lien upon: (a) all accounts, chattel paper, documents, equipment, general intangibles, instruments, and inventory, as those terms are each defined in Article 9 of the Uniform Commercial Code (the "UCC"), now or hereafter owned or acquired by Merchant and/or Guarantor(s), (b) all proceeds, as that term is defined in Article 9 of the UCC (c) all funds at any time in the Merchant's and/or Guarantor(s) Account, regardless of the source of such funds, (d) present and future Electronic Check Transactions, and (e) any amount which may be due to KCG under this Agreement, including but not limited to all rights to receive any payments or credits under this Agreement (collectively, the "Secured Assets"). Merchant agrees to provide other security to KCG upon request to secure Merchant's obligations under this Agreement. Merchant agrees that, if at any time there are insufficient funds in Merchant's Account to cover KCG's entitlements under this Agreement, KCG is granted a further security interest in all of Merchant's assets of any kind whatsoever, and such assets shall then become Secured Assets. These security interests and liens will secure all of KCG's entitlements under this Agreement and any other agreements now existing or later entered into between Merchant, KCG or an affiliate of KCG. KCG is authorized to file any and all notices or filings it deems necessary or appropriate to enforce its entitlements hereunder.

This security interest may be exercised by KCG without notice or demand of any kind by making an immediate withdrawal or freezing the Secured Assets. KCG shall have the right to notify account debtors at any time. Pursuant to Article 9 of the Uniform Commercial Code, as

amended from time to time, KCG has control over and may direct the disposition of the Secured Assets, without further consent of Merchant. Merchant hereby represents and warrants that no other person or entity has a security interest in the Secured Assets. With respect to such security interests and liens, KCG will have all rights afforded under the Uniform Commercial Code, any other applicable law and in equity. Merchant will obtain from KCG written consent prior to granting a security interest of any kind in the Secured Assets to a third party. Merchant and Guarantor (s) agree(s) that this is a contract of recoupment and KCG is not required to file a motion for relief from a bankruptcy action automatic stay to realize on any of the Secured Assets. Nevertheless, Merchant and Guarantor(s) agree(s) not to contest or object to any motion for relief from the automatic stay filed by KCG. Merchant and Guarantor(s) agree(s) to execute and deliver to KCG such instruments and documents KCG may reasonably request to perfect and confirm the lien, security interest and right of setoff set forth in this Agreement. KCG is authorized to execute all such instruments and documents in Merchant's and Guarantor(s) name.

Merchant and Guarantor(s) each acknowledge and agree that any security interest granted to KCG under any other agreement between Merchant or Guarantor(s) and KCG (the "Cross-Collateral") will secure the obligations hereunder and under the Merchant Agreement. Merchant and Guarantor(s) each agrees to execute any documents or take any action in connection with this Agreement as KCG deems necessary to perfect or maintain KCG's first priority security interest in the Collateral and the Additional Collateral, including the execution of any account control agreements. Merchant and Guarantor(s) each hereby authorizes KCG to file any financing statements deemed

necessary by KCG to perfect or maintain KCG's security interest. Merchant and Guarantor(s) shall be liable for, and KCG may charge and collect, all costs and expenses, including but not limited to attorney's fees, which may be incurred by KCG in protecting, preserving and enforcing KCG's security interest and rights.

**Negative Pledge**
Merchant and Guarantor(s) each agrees not to create, incur, assume, or permit to exist, directly or indirectly, any lien on or with respect to any of the Collateral or the Additional Collateral, as applicable.

**Consent to Enter Premises and Assign Lease**
KCG shall have the right to cure Merchant's default in the payment of rent on the following terms. In the event Merchant is served with papers in an action against Merchant for nonpayment of rent or for summary eviction, KCG may execute its rights and remedies under the Assignment of Lease. Merchant also agrees that KCG may enter into an agreement with Merchant's landlord giving KCG the right: (a) to enter Merchant's premises and to take possession of the fixtures and equipment therein for the purpose of protecting and preserving same; and/or (b) to assign Merchant's lease to another qualified business capable of operating a business comparable to Merchant's at such premises.

**Remedies**
Upon any Event of Default, KCG may pursue any remedy available at law (including those available under the provisions of the UCC), or in equity to collect, enforce, or satisfy any obligations then owing to KCG, whether by acceleration or otherwise.

Initial(s): _JCI_

F-10

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 24 of 56

5609 04/23/2018 3:18 PM

**Form 1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation
◆ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
◆ Go to *www.irs.gov/Form1120S* for instructions and the latest information.

OMB No. 1545-0123

**2017**

For calendar year 2017 or tax year beginning _____ ending _____

| | | | | |
|---|---|---|---|---|
| **A** S election effective date 04/18/13 | **TYPE** | **Name** INTERIOR COMMERCIAL INSTALLATION, I | **D** Employer identification number ███98 | |
| **B** Business activity code number (see instructions) 238300 | **OR** | **Number, street, and room or suite no. If a P.O. box, see instructions.** 3670 CONCORD AVE. | **E** Date incorporated 04/18/2013 | |
| **C** Check if Sch. M-3 attached ☐ | **PRINT** | **City or town, state or province, country, and ZIP or foreign postal code** BRENTWOOD          CA 94513 | **F** Total assets (see instructions) $ 876,629 | |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No    If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return **(2)** ☐ Name change **(3)** ☐ Address change **(4)** ☐ Amended return **(5)** ☐ S election termination or revocation

Enter the number of shareholders who were shareholders during any part of the tax year ◆ **1**

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

### Income

| | | | | |
|---|---|---|---|---|
| **1a** | Gross receipts or sales | **1a** 4,774,653 | | |
| **b** | Returns and allowances | **1b** | | |
| **c** | Balance. Subtract line 1b from line 1a | | **1c** | 4,774,653 |
| **2** | Cost of goods sold (attach Form 1125-A) | | **2** | 2,884,546 |
| **3** | Gross profit. Subtract line 2 from line 1c | | **3** | 1,890,107 |
| **4** | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | | **4** | 6,658 |
| **5** | Other income (loss) (see instructions—attach statement) | | **5** | |
| **6** | Total income (loss). Add lines 3 through 5 ◆ | | **6** | 1,896,765 |

### Deductions (see instructions for limitations)

| | | | |
|---|---|---|---|
| **7** | Compensation of officers (see instructions—attach Form 1125-E) | **7** | 169,000 |
| **8** | Salaries and wages (less employment credits) | **8** | 400,399 |
| **9** | Repairs and maintenance | **9** | 4,923 |
| **10** | Bad debts | **10** | |
| **11** | Rents | **11** | 275,161 |
| **12** | Taxes and licenses | **12** | 120,043 |
| **13** | Interest | **13** | 74,946 |
| **14** | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | **14** | 76,482 |
| **15** | Depletion (Do not deduct oil and gas depletion.) | **15** | |
| **16** | Advertising | **16** | 20,703 |
| **17** | Pension, profit-sharing, etc., plans | **17** | |
| **18** | Employee benefit programs | **18** | 43,798 |
| **19** | Other deductions (attach statement)          SEE STMT 1 | **19** | 470,762 |
| **20** | Total deductions. Add lines 7 through 19 ◆ | **20** | 1,656,217 |
| **21** | Ordinary business income (loss). Subtract line 20 from line 6 | **21** | 240,548 |

### Tax and Payments

| | | | | |
|---|---|---|---|---|
| **22a** | Excess net passive income or LIFO recapture tax (see instructions) | **22a** | | |
| **b** | Tax from Schedule D (Form 1120S) | **22b** | | |
| **c** | Add lines 22a and 22b (see instructions for additional taxes) | | **22c** | |
| **23a** | 2017 estimated tax payments and 2016 overpayment credited to 2017 | **23a** | | |
| **b** | Tax deposited with Form 7004 | **23b** | | |
| **c** | Credit for federal tax paid on fuels (attach Form 4136) | **23c** | | |
| **d** | Add lines 23a through 23c | | **23d** | |
| **24** | Estimated tax penalty (see instructions). Check if Form 2220 is attached ◆ ☐ | | **24** | |
| **25** | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | **25** | |
| **26** | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | **26** | |
| **27** | Enter amount from line 26 Credited to 2018 estimated tax ◆ ___ Refunded ◆ | | **27** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer JENS JENSEN          Date          Title PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name ARLAN KERTZ | Preparer's signature ARLAN KERTZ | Date 04/23/18 | Check ☒ if self-employed    PTIN P01226786 |
| Firm's name ◆ HATTER & WISE, CPAS | | | Firm's EIN ◆ ███ |
| Firm's address ◆ 150 POST ST. STE 610 SAN FRANCISCO, CA          94108-4722 | | | Phone no. ███ |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1120S** (2017)

DAA



Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 25 of 56

Form 1120S (2017)  **INTERIOR COMMERCIAL INSTALLATION, I** ███████998    Page 2

## Schedule B   Other Information (see instructions)

|   |   | Yes | No |
|---|---|---|---|
| 1 | Check accounting method:  a ☒ Cash  b ☐ Accrual <br> c ☐ Other (specify) ◆ .......................................... |   |   |
| 2 | See the instructions and enter the: <br> a Business activity ◆ FINISHING CONTRACTOR   b Product or service ◆ COUNTER TOPS |   |   |
| 3 | At any time during the tax year, was any shareholder of the corporation a disregarded entity, a trust, an estate, or a nominee or similar person? If "Yes," attach Schedule B-1, Information on Certain Shareholders of an S Corporation ............... |   | X |
| 4 | At the end of the tax year, did the corporation: |   |   |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total stock issued and outstanding of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ................................................................................ |   | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage of Stock Owned | (v) If Percentage in (iv) is 100%, Enter the Date (if any) a Qualified Subchapter S Subsidiary Election Was Made |
|---|---|---|---|---|
|   |   |   |   |   |
|   |   |   |   |   |
|   |   |   |   |   |
|   |   |   |   |   |

| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If "Yes," complete (i) through (v) below ............... |   | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
|   |   |   |   |   |
|   |   |   |   |   |
|   |   |   |   |   |
|   |   |   |   |   |

|   |   | Yes | No |
|---|---|---|---|
| 5a | At the end of the tax year, did the corporation have any outstanding shares of restricted stock? .................. |   | X |
|   | If "Yes," complete lines (i) and (ii) below. |   |   |
|   | (i)  Total shares of restricted stock ............................................... ◆ |   |   |
|   | (ii) Total shares of non-restricted stock .......................................... ◆ |   |   |
| b | At the end of the tax year, did the corporation have any outstanding stock options, warrants, or similar instruments? ...... |   | X |
|   | If "Yes," complete lines (i) and (ii) below. |   |   |
|   | (i)  Total shares of stock outstanding at the end of the tax year .......................... ◆ |   |   |
|   | (ii) Total shares of stock outstanding if all instruments were executed ..................... ◆ |   |   |
| 6 | Has this corporation filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? ....................................................... |   | X |
| 7 | Check this box if the corporation issued publicly offered debt instruments with original issue discount ............ ◆ ☐ |   |   |
|   | If checked, the corporation may have to file Form 8281, Information Return for Publicly Offered Original Issue Discount Instruments. |   |   |
| 8 | If the corporation: (a) was a C corporation before it elected to be an S corporation or the corporation acquired an asset with a basis determined by reference to the basis of the asset (or the basis of any other property) in the hands of a C corporation and (b) has net unrealized built-in gain in excess of the net recognized built-in gain from prior years, enter the net unrealized built-in gain reduced by net recognized built-in gain from prior years (see instructions) ..................................................................... ◆ $ |   |   |
| 9 | Enter the accumulated earnings and profits of the corporation at the end of the tax year. ................ $ |   |   |
| 10 | Does the corporation satisfy both of the following conditions? |   |   |
| a | The corporation's total receipts (see instructions) for the tax year were less than $250,000 .................. |   |   |
| b | The corporation's total assets at the end of the tax year were less than $250,000 ....................... |   | X |
|   | If "Yes," the corporation is not required to complete Schedules L and M-1. |   |   |
| 11 | During the tax year, did the corporation have any non-shareholder debt that was canceled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? ................................... |   | X |
|   | If "Yes," enter the amount of principal reduction ....................................... $ |   | X |
| 12 | During the tax year, was a qualified subchapter S subsidiary election terminated or revoked? If "Yes," see instructions ......... |   | X |
| 13a | Did the corporation make any payments in 2017 that would require it to file Form(s) 1099? .................. | X |   |
| b | If "Yes," did the corporation file or will it file required Forms 1099? ................................ | X |   |

Form **1120S** (2017)

DAA

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 26 of 56

**Schedule K** **Shareholders' Pro Rata Share Items**

| | | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 21) | 1 | 240,548 |
| | 2 Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a Other gross rental income (loss) ... 3a | | |
| | b Expenses from other rental activities (attach statement) ... 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Interest income | 4 | |
| | 5 Dividends: a Ordinary dividends | 5a | |
| | b Qualified dividends ... 5b | | |
| | 6 Royalties | 6 | |
| | 7 Net short-term capital gain (loss) (attach Schedule D (Form 1120S)) | 7 | |
| | 8a Net long-term capital gain (loss) (attach Schedule D (Form 1120S)) | 8a | |
| | b Collectibles (28%) gain (loss) ... 8b | | |
| | c Unrecaptured section 1250 gain (attach statement) ... 8c | | |
| | 9 Net section 1231 gain (loss) (attach Form 4797) | 9 | |
| | 10 Other income (loss) (see instructions)        Type ◆ | 10 | |
| **Deductions** | 11 Section 179 deduction (attach Form 4562) | 11 | 147,144 |
| | 12a Charitable contributions | 12a | |
| | b Investment interest expense | 12b | |
| | c Section 59(e)(2) expenditures (1) Type ◆        (2) Amount ◆ | 12c(2) | |
| | d Other deductions (see instructions)        Type ◆ | 12d | |
| **Credits** | 13a Low-income housing credit (section 42(j)(5)) | 13a | |
| | b Low-income housing credit (other) | 13b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468, if applicable) | 13c | |
| | d Other rental real estate credits (see instructions)        Type ◆ | 13d | |
| | e Other rental credits (see instructions)        Type ◆ | 13e | |
| | f Biofuel producer credit (attach Form 6478) | 13f | |
| | g Other credits (see instructions)        Type ◆ | 13g | |
| **Foreign Transactions** | 14a Name of country or U.S. possession ◆ | | |
| | b Gross income from all sources | 14b | |
| | c Gross income sourced at shareholder level | 14c | |
| | Foreign gross income sourced at corporate level | | |
| | d Passive category | 14d | |
| | e General category | 14e | |
| | f Other (attach statement) | 14f | |
| | Deductions allocated and apportioned at shareholder level | | |
| | g Interest expense | 14g | |
| | h Other | 14h | |
| | Deductions allocated and apportioned at corporate level to foreign source income | | |
| | i Passive category | 14i | |
| | j General category | 14j | |
| | k Other (attach statement) | 14k | |
| | Other information | | |
| | l Total foreign taxes (check one): ◆ ☐ Paid ☐ Accrued | 14l | |
| | m Reduction in taxes available for credit (attach statement) | 14m | |
| | n Other foreign tax information (attach statement) | | |
| **Alternative Minimum Tax (AMT) Items** | 15a Post-1986 depreciation adjustment | 15a | 18,682 |
| | b Adjusted gain or loss | 15b | |
| | c Depletion (other than oil and gas) | 15c | |
| | d Oil, gas, and geothermal properties – gross income | 15d | |
| | e Oil, gas, and geothermal properties – deductions | 15e | |
| | f Other AMT items (attach statement) | 15f | |
| **Items Affecting Shareholder Basis** | 16a Tax-exempt interest income | 16a | |
| | b Other tax-exempt income | 16b | |
| | c Nondeductible expenses | 16c | 76,674 |
| | d Distributions (attach statement if required) (see instructions) | 16d | 129,670 |
| | e Repayment of loans from shareholders | 16e | |

Form **1120S** (2017)

DAA

Form 1120S (2017)  **INTERIOR COMMERCIAL INSTALLATION, I** ▓▓▓▓▓▓98                    Page 4

## Schedule K — Shareholders' Pro Rata Share Items (continued)

| | | | | Total amount |
|---|---|---|---|---|
| **Other Information** | 17a | Investment income | 17a | |
| | b | Investment expenses | 17b | |
| | c | Dividend distributions paid from accumulated earnings and profits | 17c | |
| | d | Other items and amounts (attach statement)    SEE STATEMENT 2 | | |
| **Recon-ciliation** | 18 | Income/loss reconciliation. Combine the amounts on lines 1 through 10 in the far right column. From the result, subtract the sum of the amounts on lines 11 through 12d and 14l | 18 | 93,404 |

## Schedule L — Balance Sheets per Books

| | Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|---|
| 1 | Cash | | | | |
| 2a | Trade notes and accounts receivable | | | | |
| b | Less allowance for bad debts | ( | | ( | |
| 3 | Inventories | | | | |
| 4 | U.S. government obligations | | | | |
| 5 | Tax-exempt securities (see instructions) | | | | |
| 6 | Other current assets (attach statement)   STMT 3 | | 26,745 | | 20,274 |
| 7 | Loans to shareholders | | 600,000 | | 600,000 |
| 8 | Mortgage and real estate loans | | | | |
| 9 | Other investments (attach statement) | | | | |
| 10a | Buildings and other depreciable assets | 696,564 | | 1,004,292 | |
| b | Less accumulated depreciation | 585,652 | 110,912 | 809,278 | 195,014 |
| 11a | Depletable assets | | | | |
| b | Less accumulated depletion | ( | | ( | |
| 12 | Land (net of any amortization) | | 46,425 | | 73,313 |
| 13a | Intangible assets (amortizable only) | 46,425 | | 73,313 | |
| b | Less accumulated amortization | 12,323 | 34,102 | 24,666 | 48,647 |
| 14 | Other assets (attach statement)   STMT 4 | | 12,694 | | 12,694 |
| 15 | Total assets | | 784,453 | | 876,629 |
| | **Liabilities and Shareholders' Equity** | | | | |
| 16 | Accounts payable | | 119,141 | | 246,872 |
| 17 | Mortgages, notes, bonds payable in less than 1 year | | | | |
| 18 | Other current liabilities (attach statement)   STMT 5 | | 282 | | 1,905 |
| 19 | Loans from shareholders | | | | |
| 20 | Mortgages, notes, bonds payable in 1 year or more | | 638,861 | | 714,623 |
| 21 | Other liabilities (attach statement) | | | | |
| 22 | Capital stock | | | | |
| 23 | Additional paid-in capital | | | | |
| 24 | Retained earnings | | 26,169 | | -86,771 |
| 25 | Adjustments to shareholders' equity (attach statement) | | | | |
| 26 | Less cost of treasury stock | | ( | | ( ) |
| 27 | Total liabilities and shareholders' equity | | 784,453 | | 876,629 |

Form **1120S** (2017)

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 28 of 56

Form 1120S (2017)  INTERIOR COMMERCIAL INSTALLATION, I       998                 Page 5

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note: The corporation may be required to file Schedule M-3 (see instructions)

| | | | | | |
|---|---|---|---|---|---|
| 1 | Net income (loss) per books | 10,072 | 5 | Income recorded on books this year not included on Schedule K, lines 1 through 10 (itemize): | |
| 2 | Income included on Schedule K, lines 1, 2, 3c, 4, 5a, 6, 7, 8a, 9, and 10, not recorded on books this year (itemize)   STMT 6 | 6,658 | a | Tax-exempt interest $ .................... | |
| 3 | Expenses recorded on books this year not included on Schedule K, lines 1 through 12 and 14l (itemize): | | 6 | Deductions included on Schedule K, lines 1 through 12 and 14l, not charged against book income this year (itemize): | |
| a | Depreciation $ .................... | | a | Depreciation $ .................... | |
| b | Travel and entertainment $ ......... 76,674 | | | | |
| | | 76,674 | 7 | Add lines 5 and 6 | |
| 4 | Add lines 1 through 3 | 93,404 | 8 | Income (loss) (Schedule K, line 18). Line 4 less line 7 | 93,404 |

## Schedule M-2   Analysis of Accumulated Adjustments Account, Other Adjustments Account, and Shareholders' Undistributed Taxable Income Previously Taxed (see instructions)

| | | (a) Accumulated adjustments account | (b) Other adjustments account | (c) Shareholders' undistributed taxable income previously taxed |
|---|---|---|---|---|
| 1 | Balance at beginning of tax year | 26,169 | | |
| 2 | Ordinary income from page 1, line 21 | 240,548 | | |
| 3 | Other additions | | | |
| 4 | Loss from page 1, line 21 | ( ) | | |
| 5 | Other reductions   STMT 7 | 223,818 | | |
| 6 | Combine lines 1 through 5 | 42,899 | | |
| 7 | Distributions other than dividend distributions | 129,670 | | |
| 8 | Balance at end of tax year. Subtract line 7 from line 6 | -86,771 | | |

Form **1120S** (2017)

DAA

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 29 of 56

Form **1125-A**

(Rev. October 2016)
Department of the Treasury
Internal Revenue Service

## Cost of Goods Sold

◆ Attach to Form 1120, 1120-C, 1120-F, 1120S, 1065, or 1065-B.
◆ Information about Form 1125-A and its instructions is at *www.irs.gov/form1125a.*

OMB No. 1545-0123

| Name | Employer identification number |
|---|---|
| INTERIOR COMMERCIAL INSTALLATION, I | ██████98 |

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases | 2 | 1,136,376 |
| 3 | Cost of labor | 3 | 819,349 |
| 4 | Additional section 263A costs (attach schedule) | 4 | |
| 5 | Other costs (attach schedule)                    STMT 8 | 5 | 928,821 |
| 6 | Total. Add lines 1 through 5 | 6 | 2,884,546 |
| 7 | Inventory at end of year | 7 | |
| 8 | Cost of goods sold. Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | 8 | 2,884,546 |

**9a** Check all methods used for valuing closing inventory:

    (i) ☐ Cost

    (ii) ☐ Lower of cost or market

    (iii) ☐ Other (Specify method used and attach explanation.) ◆ ☐

**b** Check if there was a writedown of subnormal goods ◆ ☐

**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ◆ ☐

**d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed under LIFO | 9d |

**e** If property is produced or acquired for resale, do the rules of section 263A apply to the entity? See instructions    ☐ Yes   ☒ No

**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? If "Yes," attach explanation    ☐ Yes   ☒ No

For Paperwork Reduction Act Notice, see instructions.

Form **1125-A** (Rev. 10-2016)

DAA

**Schedule K-1**
**(Form 1120S)**
Department of the Treasury
Internal Revenue Service

**2017**
For calendar year 2017, or tax year

beginning _____ ending _____

□ Final K-1   □ Amended K-1

671117
OMB No. 1545-0123

**Shareholder's Share of Income, Deductions, Credits, etc.**   ▶ See back of form and separate instructions.

| Part III | Shareholder's Share of Current Year Income, Deductions, Credits, and Other Items | |
|---|---|---|
| **1** Ordinary business income (loss) | 240,548 | **13** Credits |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | | |
| **4** Interest income | | |
| **5a** Ordinary dividends | | |
| **5b** Qualified dividends | | **14** Foreign transactions |
| **6** Royalties | | |
| **7** Net short-term capital gain (loss) | | |
| **8a** Net long-term capital gain (loss) | | |
| **8b** Collectibles (28%) gain (loss) | | |
| **8c** Unrecaptured section 1250 gain | | |
| **9** Net section 1231 gain (loss) | | |
| **10** Other income (loss) | | **15** Alternative minimum tax (AMT) items |
| | | A   18,682 |
| **11** Section 179 deduction | 147,144 | **16** Items affecting shareholder basis |
| | | C*   76,674 |
| **12** Other deductions | | D   129,670 |
| | | **17** Other information |
| | | K*   STMT |

**Part I   Information About the Corporation**

A  Corporation's employer identification number
       ██████98

B  Corporation's name, address, city, state, and ZIP code
   INTERIOR COMMERCIAL INSTALLATION, I
   3670 CONCORD AVE.
   BRENTWOOD                CA   94513

C  IRS Center where corporation filed return
   E-FILE

**Part II   Information About the Shareholder**

D  Shareholder's identifying number
   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

E  Shareholder's name, address, city, state, and ZIP code
   JENS CHRISTIAN JENSEN
   3670 CONCORD AVE.

   BRENTWOOD                CA   94513

F  Shareholder's percentage of stock
   ownership for tax year  ........................  100.000000 %

For IRS Use Only

* See attached statement for additional information.

For Paperwork Reduction Act Notice, see the Instructions for Form 1120S.   www.irs.gov/Form1120S          Schedule K-1 (Form 1120S) 2017

DAA

**Form 1125-E**
(Rev. October 2016)
Department of the Treasury
Internal Revenue Service

# Compensation of Officers

◆ Attach to Form 1120, 1120-C, 1120-F, 1120-REIT, 1120-RIC, or 1120S.

◆ Information about Form 1125-E and its separate instructions is at *www.irs.gov/form1125e.*

OMB No. 1545-0123

Name: **INTERIOR COMMERCIAL INSTALLATION, I**

Employer identification number: ▰▰▰▰▰▰**98**

**Note:** Complete Form 1125-E only if total receipts are $500,000 or more. See instructions for definition of total receipts.

| (a) Name of officer | (b) Social security number (see instructions) | (c) Percent of time devoted to business | (d) Common | (e) Preferred | (f) Amount of compensation |
|---|---|---|---|---|---|
| 1 JENS C JENSEN | 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 | 100.000 % | 100.000 % | % | 169,000 |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |
| | | % | % | % | |

Percent of stock owned applies to columns (d) Common and (e) Preferred.

| | | | |
|---|---|---|---|
| 2 | Total compensation of officers | 2 | 169,000 |
| 3 | Compensation of officers claimed on Form 1125-A or elsewhere on return | 3 | |
| 4 | Subtract line 3 from line 2. Enter the result here and on Form 1120, page 1, line 12 or the appropriate line of your tax return | 4 | 169,000 |

For Paperwork Reduction Act Notice, see separate instructions.

Form 1125-E (Rev. 10-2016)

DAA

# Form 4562

Department of the Treasury
Internal Revenue Service (99)

## Depreciation and Amortization
### (Including Information on Listed Property)
◆ Attach to your tax return.
◆ Go to www.irs.gov/Form4562 for instructions and the latest information.

OMB No. 1545-0172

**2017**

Attachment Sequence No. **179**

Name(s) shown on return
**INTERIOR COMMERCIAL INSTALLATION, I**

Identifying number
■■■■■■■98

Business or activity to which this form relates
**REGULAR DEPRECIATION**

## Part I — Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 510,000 |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | 307,729 |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,030,000 |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | 0 |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | 510,000 |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | EQUIPMENT | 147,144 | 147,144 |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | 147,144 |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | 147,144 |
| 10 | Carryover of disallowed deduction from line 13 of your 2016 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instructions) | 11 | 409,548 |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | 12 | 147,144 |
| 13 | Carryover of disallowed deduction to 2018. Add lines 9 and 10, less line 12 ▶ | 13 | |

Note: Don't use Part II or Part III below for listed property. Instead, use Part V.

## Part II — Special Depreciation Allowance and Other Depreciation (Don't include listed property.) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

## Part III — MACRS Depreciation (Don't include listed property.) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2017 | 17 | 44,365 |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ◆ ☐ | | |

### Section B—Assets Placed in Service During 2017 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only—see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 160,585 | 5.0 | HY | 200DB | 32,117 |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | | | 27.5 yrs. | MM | S/L | |
| | | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | | | 39 yrs. | MM | S/L | |
| | | | | MM | S/L | |

### Section C—Assets Placed in Service During 2017 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 40-year | | | 40 yrs. | MM | S/L | |

## Part IV — Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations—see instructions | 22 | 76,482 |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

For Paperwork Reduction Act Notice, see separate instructions.

Form **4562** (2017)

DAA

Form 4562 (2017)

Page **2**

## Part V    Listed Property (Include automobiles, certain other vehicles, certain aircraft, certain computers, and property used for entertainment, recreation, or amusement.)

Note: For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

### Section A—Depreciation and Other Information (Caution: See the instructions for limits for passenger automobiles.)

| 24a | Do you have evidence to support the business/investment use claimed? | | Yes | No | 24b | If "Yes," is the evidence written? | | Yes | No |
|---|---|---|---|---|---|---|---|---|---|

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) ......... | | | | | 25 | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | % | | | | | | |
| | | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | % | | | | S/L- | | |
| | | % | | | | S/L- | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 .............. | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 ..................................... | | | | | | | 29 | |

### Section B—Information on Use of Vehicles

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 | Total business/investment miles driven during the year (don't include commuting miles) | | | | | | | | | | | | |
| 31 | Total commuting miles driven during the year ...... | | | | | | | | | | | | |
| 32 | Total other personal (noncommuting) miles driven .................................... | | | | | | | | | | | | |
| 33 | Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 | Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 | Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 | Is another vehicle available for personal use? ...... | | | | | | | | | | | | |

### Section C—Questions for Employers Who Provide Vehicles for Use by Their Employees

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who aren't more than 5% owners or related persons (see instructions).

| | | Yes | No |
|---|---|---|---|
| 37 | Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 | Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners .............. | | |
| 39 | Do you treat all use of vehicles by employees as personal use? | | |
| 40 | Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 | Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) .............. | | |

Note: If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

## Part VI    Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2017 tax year (see instructions): | | | | | |
| SEE STATEMENT 9 | | 26,888 | | | 1,738 |
| 43 Amortization of costs that began before your 2017 tax year ........................ | | | | 43 | 10,605 |
| 44 Total. Add amounts in column (f). See the instructions for where to report .............. | | | | 44 | 12,343 |

DAA

Form 4562 (2017)

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 34 of 56

**Form 4797**

Department of the Treasury
Internal Revenue Service

# Sales of Business Property
## (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2))
◆ **Attach to your tax return.**
◆ Go to *www.irs.gov/Form4797* for instructions and the latest information.

OMB No. 1545-0184

**2017**

Attachment Sequence No. **27**

Name(s) shown on return: **INTERIOR COMMERCIAL INSTALLATION, I**

Identifying number: **98**

**1** Enter the gross proceeds from sales or exchanges reported to you for 2017 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20. See instructions ........... | **1** |

### Part I — Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft—Most Property Held More Than 1 Year (see instructions)

| 2 (a) Description of property | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) | (d) Gross sales price | (e) Depreciation allowed or allowable since acquisition | (f) Cost or other basis, plus improvements and expense of sale | (g) Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| PREPAID INTEREST | 05/05/15 | 03/21/17 | | 2,830 | 2,830 | |

| | | |
|---|---|---|
| **3** Gain, if any, from Form 4684, line 39 ..................................................... | **3** | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 ..................... | **4** | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 ....................... | **5** | |
| **6** Gain, if any, from line 32, from other than casualty or theft ............................... | **6** | |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows: | **7** | 0 |

Partnerships (except electing large partnerships) and S corporations. Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

Individuals, partners, S corporation shareholders, and all others. If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions ...................... | **8** | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions ...................... | **9** | |

### Part II — Ordinary Gains and Losses (see instructions)

**10** Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| | | | | | | |
|---|---|---|---|---|---|---|
| TRUCK | 01/01/17 | 09/22/17 | 12,000 | | 22,073 | -10,073 |

| | | |
|---|---|---|
| **11** Loss, if any, from line 7 ........................................................ | **11** ( | ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable ..................... | **12** | |
| **13** Gain, if any, from line 31 ....................................................... | **13** | 16,731 |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a ........................... | **14** | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 .............. | **15** | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 ............... | **16** | |
| **17** Combine lines 10 through 16 ................................................... | **17** | 6,658 |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below:

| | | |
|---|---|---|
| **a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the part of the loss from income-producing property on Schedule A (Form 1040), line 28, and the part of the loss from property used as an employee on Schedule A (Form 1040), line 23. Identify as from "Form 4797, line 18a." See instructions ............... | **18a** | |
| **b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Form 1040, line 14 | **18b** | |

For Paperwork Reduction Act Notice, see separate instructions.

Form **4797** (2017)

DAA

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 35 of 56

Form 4797 (2017)  INTERIOR COMMERCIAL INSTALLATION, I ▓▓▓▓▓▓▓98                           Page 2

**Part III**   Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255
(see instructions)

| 19 | (a) Description of section 1245, 1250, 1252, 1254, or 1255 property: | (b) Date acquired (mo., day, yr.) | (c) Date sold (mo., day, yr.) |
|---|---|---|---|
| A | TRUCK | 05/05/15 | 03/17/17 |
| B | | | |
| C | | | |
| D | | | |

| | These columns relate to the properties on lines 19A through 19D. ◆ | | Property A | Property B | Property C | Property D |
|---|---|---|---|---|---|---|
| 20 | Gross sales price (Note: See line 1 before completing.) | 20 | 16,731 | | | |
| 21 | Cost or other basis plus expense of sale | 21 | 24,518 | | | |
| 22 | Depreciation (or depletion) allowed or allowable | 22 | 24,518 | | | |
| 23 | Adjusted basis. Subtract line 22 from line 21 | 23 | 0 | | | |
| 24 | Total gain. Subtract line 23 from line 20 | 24 | 16,731 | | | |
| 25 | If section 1245 property: | | | | | |
| a | Depreciation allowed or allowable from line 22 | 25a | 24,518 | | | |
| b | Enter the smaller of line 24 or 25a | 25b | 16,731 | | | |
| 26 | If section 1250 property: If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| a | Additional depreciation after 1975. See instructions | 26a | | | | |
| b | Applicable percentage multiplied by the smaller of line 24 or line 26a. See instructions | 26b | | | | |
| c | Subtract line 26a from line 24. If residential rental property or line 24 isn't more than line 26a, skip lines 26d and 26e | 26c | | | | |
| d | Additional depreciation after 1969 and before 1976 | 26d | | | | |
| e | Enter the smaller of line 26c or 26d | 26e | | | | |
| f | Section 291 amount (corporations only) | 26f | | | | |
| g | Add lines 26b, 26e, and 26f | 26g | | | | |
| 27 | If section 1252 property: Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership (other than an electing large partnership). | | | | | |
| a | Soil, water, and land clearing expenses | 27a | | | | |
| b | Line 27a multiplied by applicable percentage. See instructions | 27b | | | | |
| c | Enter the smaller of line 24 or 27b | 27c | | | | |
| 28 | If section 1254 property: | | | | | |
| a | Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion. See instructions | 28a | | | | |
| b | Enter the smaller of line 24 or 28a | 28b | | | | |
| 29 | If section 1255 property: | | | | | |
| a | Applicable percentage of payments excluded from income under section 126. See instructions | 29a | | | | |
| b | Enter the smaller of line 24 or 29a. See instructions | 29b | | | | |

**Summary of Part III Gains. Complete property columns A through D through line 29b before going to line 30.**

| 30 | Total gains for all properties. Add property columns A through D, line 24 | 30 | 16,731 |
|---|---|---|---|
| 31 | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | 31 | 16,731 |
| 32 | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | 32 | 0 |

**Part IV**   Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less
(see instructions)

| | | | (a) Section 179 | (b) Section 280F(b)(2) |
|---|---|---|---|---|
| 33 | Section 179 expense deduction or depreciation allowable in prior years | 33 | | |
| 34 | Recomputed depreciation. See instructions | 34 | | |
| 35 | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | 35 | | |

DAA                                                                                    Form **4797** (2017)

| Form **1120S** | **Section 179 Disposal Worksheet** | **2017** |
|---|---|---|
| | For calendar year 2017 or tax year beginning , ending | |

| Name | Employer Identification Number |
|---|---|
| INTERIOR COMMERCIAL INSTALLATION, I | ●●●●●●●●98 |

| | Asset Description | Date Acquired | Date Sold | Casualty Occurrence Description |
|---|---|---|---|---|
| A | TRUCK | 05/05/15 | 03/21/17 | |
| B | | | | |
| C | | | | |
| D | | | | |
| E | | | | |
| F | | | | |
| G | | | | |
| H | | | | |
| I | | | | |

| Sale Information: | Property A | Property B | Property C | Property D | Property E | Property F | Property G | Property H | Property I |
|---|---|---|---|---|---|---|---|---|---|
| Gross sales price | | | | | | | | | |
| Cost or basis | 24,518 | | | | | | | | |
| Commissions/other expenses | | | | | | | | | |
| Accumulated depr excluding Sec 179 | | | | | | | | | |
| Section 179 | 24,518 | | | | | | | | |
| AMT gain/loss adjustment | | | | | | | | | |
| Sale to related party | | | | | | | | | |
| Casualty gain on Form 4797, Part III | | | | | | | | | |
| Section 1250 property | NO | | | | | | | | |

| Installment Sale Information: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Mortgage and other debts | | | | | | | | | |
| Current year payments received | | | | | | | | | |
| Prior year payments received | | | | | | | | | |
| Installment Sale Related Party Info: | | | | | | | | | |

| Casualty / Theft Information: | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Total net reimbursement | | | | | | | | | |
| Cost or basis | | | | | | | | | |
| Accumulated depr excluding Sec 179 | | | | | | | | | |
| Section 179 | | | | | | | | | |
| FMV before loss | | | | | | | | | |
| FMV after loss | | | | | | | | | |
| AMT gain/loss adjustment | | | | | | | | | |
| Property type | | | | | | | | | |

| Gain (loss) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|

| Net gain (loss) on disposal of 179 assets | |
|---|---|

# Federal Statements

### Statement 1 - Form 1120S, Page 1, Line 19 - Other Deductions

| Description | Amount |
|---|---|
| AUTO & TRUCK EXPENSE | $    25,147 |
| WORKERS COMPESATION INSURANCE | 95,252 |
| COMMISSIONS | 4,023 |
| OFFICE SUPPLIES | 25,106 |
| FREIGHT | 3,058 |
| INSURANCE | 44,790 |
| UTILITIES | 43,017 |
| COMPUTER EXPENSE | 53,530 |
| POSTAGE | 2,624 |
| BANK SERVICE CHARGES | 980 |
| PROFESSIONAL FEES | 7,300 |
| PAYROLL EXPENSE | 4,058 |
| TRAVEL | 1,208 |
| TOLLS & PARKING | 14,527 |
| FEES & SUBSCRIPTIONS | 3,947 |
| SECURITY | 1,774 |
| TELEPHONE | 25,546 |
| LOAN FEES | 5,967 |
| CONSULTING FEES | 19,890 |
| AMORTIZATION | 12,343 |
| 50% OF MEALS & ENTERTAINMENT | 76,675 |
| TOTAL | $    470,762 |

### Statement 2 - Form 1120S, Page 4, Schedule K, Line 17d - Other Items and Amounts

| Description | Amount |
|---|---|
| DISPOSAL OF SECTION 179 PROPERTY - SEE ATTACHED WRK | |

### Statement 3 - Form 1120S, Page 4, Schedule L, Line 6 - Other Current Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| PAYROLL TAX PAYMENTS | $    13,490 | $    13,426 |
| DUE FROM EMPLOYEES | 1,900 | 4,217 |
| OTHER RECEIVABLES | 8,914 | 2,631 |
| ADVANCE PAYMENT | 2,441 | |
| TOTAL | $    26,745 | $    20,274 |

### Statement 4 - Form 1120S, Page 4, Schedule L, Line 14 - Other Assets

| Description | Beginning of Year | End of Year |
|---|---|---|
| SECURITY DEPOSITS | $    12,694 | $    12,694 |
| TOTAL | $    12,694 | $    12,694 |

Case: 18-42874    Doc# 3    Filed: 12/07/18    Entered: 12/07/18 12:48:10    Page 38 of 56

**Federal Statements**

### Statement 5 - Form 1120S, Page 4, Schedule L, Line 18 - Other Current Liabilities

| Description | Beginning of Year | End of Year |
|---|---|---|
| SALES TAX | $ 282 | $ |
| OTHER LIABILITIES | | 1,905 |
| TOTAL | $ 282 | $ 1,905 |

### Statement 6 - Form 1120S, Page 5, Schedule M-1, Line 2 - Taxable Income Not on Books

| Description | Amount |
|---|---|
| FORM 4797 BOOK/TAX DIFF | $ 6,658 |
| TOTAL | $ 6,658 |

### Statement 7 - Form 1120S, Page 5, Schedule M-2, Line 5(a) - Other Reductions

| Description | Amount |
|---|---|
| MEALS & ENTERTAINMENT | $ 76,674 |
| SECTION 179 EXPENSE | 147,144 |
| TOTAL | $ 223,818 |

5-7

# Federal Statements

### Statement 8 - Form 1125-A, Line 5 - Other Costs

| Description | Amount |
|---|---|
| SUPPLIES | $ 251,709 |
| EQUIPMENT RENTAL | 32,250 |
| REPAIRS | 24,095 |
| DRAFTING & ESTIMATING | 168,990 |
| FUEL EXPENSES | 63,127 |
| OUTSIDE INSTALLATION | 388,650 |
| TOTAL | $ 928,821 |

8

Regular Depreciation

#### Statement 9 - Form 4562, Part VI, Line 42 - Amortization

| Description | Date Amortization Begins | Amortizable Amount | Code Section | Period/ Percent | Current Year Amortization |
|---|---|---|---|---|---|
| PREPAID INTEREST | 1/01/17 | $       7,033 | 461 | 5.0 | $       1,407 |
| PREPAID INTEREST | 12/31/17 | 19,855 | 461 | 5.0 | 331 |
| TOTAL | | $      26,888 | | | $       1,738 |

9

### Form 1120S, Page 1, Line 1a - Gross Receipts or Sales

| Description | Amount |
|---|---|
| GROSS RECEIPTS | $    4,774,653 |
| TOTAL | $    4,774,653 |

### Form 1120S, Page 1, Line 12 - Taxes and Licenses

| Description | Amount |
|---|---|
| PAYROLL TAXES | $      114,022 |
| BUSINESS TAX | 1,518 |
| CALIFORNIA FRANCHISE TAX BOAR | 454 |
| SF GROSS RECEIPTS TAX | 3,298 |
| PROPERTY TAX | 751 |
| TOTAL | $      120,043 |

### Form 1120S, Page 1, Line 13 - Interest

| Description | Amount |
|---|---|
| INTEREST EXPENSE | $       65,771 |
| INTEREST TRAILER LOAN | 9,175 |
| TOTAL | $       74,946 |

### Form 1120S, Page 1, Line 18 - Employee Benefit Programs

| Description | Amount |
|---|---|
| EMPLOYEE BENEFIT PROGRAM | $       43,798 |
| TOTAL | $       43,798 |

### Form 1120S, Page 3, Schedule K, Line 16c - Nondeductible Expenses

| Description | Amount |
|---|---|
| PAGE 1 MEALS/ENTERTAINMENT | $       76,674 |
| TOTAL | $       76,674 |

### Form 1120S, Page 4, Schedule L, Line 7 - Loans to Shareholders

| Description | Beginning of Year | End of Year |
|---|---|---|
| LOANS TO SHAREHOLDERS | $      600,000 | $      600,000 |
| TOTAL | $      600,000 | $      600,000 |

### Form 1120S, Page 4, Schedule L, Line 20 - Mortgages, Notes, Bonds Payable in One Year or More

| Description | Beginning of Year | End of Year |
|---|---|---|
| VEHICLE LOAN | $ 265,852 | $ 481,845 |
| EQUIPMENT LOAN | 53,331 | |
| BANK LOANS | 319,678 | 232,778 |
| TOTAL | $ 638,861 | $ 714,623 |

## Form 1125-A, Line 3 - Cost of Labor

| Description | Amount |
|---|---|
| COST OF LABOR | $ 819,349 |
| TOTAL | $ 819,349 |

### Form 4562, Page 1, Line 11 - Business Income Limitation

| Description | Amount |
|---|---|
| ORDINARY INCOME (LOSS) | $ 240,548 |
| SHAREHOLDER WAGES | 169,000 |
| BUSINESS INCOME | 409,548 |

### REPAIRS

| Description | Amount |
| --- | --- |
| REPAIRS | $ 4,923 |
| TOTAL | $ 4,923 |

### Employee benefits

| Code | Description | Amount |
| --- | --- | --- |
| | EMPLOEE HEALTH INSURANCE | $ 43,798 |
| | TOTAL | $ 43,798 |

5609  INTERIOR COMMERCIAL INSTALLATION, I

98

FYE: 12/31/2017

**Federal Statements**

**JENS CHRISTIAN JENSEN**
**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**

4/23/2018  3:17 PM

## Schedule K-1, Box 16, Code C - Nondeductible Expenses

| Description | Shareholder Amount |
|---|---|
| PAGE 1  MEALS/ENTERTAINMENT | $ 76,674 |
| TOTAL | $ 76,674 |

## Schedule K-1, Box 17, Code K - Shareholder's Disposition of Section 179 Property

| Form **1120S** Schedule K-1 | For calendar year 2017 or tax year beginning , ending | | **2017** |
|---|---|---|---|

| Name | Taxpayer Identification Number |
|---|---|
| INTERIOR COMMERCIAL INSTALLATION, I | ████████98 |
| JENS CHRISTIAN JENSEN | ███████7900 |

| | Asset Description | Date Acquired | Date Disposed | Casualty Occurrence Description |
|---|---|---|---|---|
| A | TRUCK | 05/05/15 | 03/21/17 | |
| B | | | | |
| C | | | | |
| D | | | | |
| E | | | | |
| F | | | | |
| G | | | | |
| H | | | | |
| I | | | | |

| Sale Information: | Property A | Property B | Property C | Property D | Property E | Property F | Property G | Property H | Property I |
|---|---|---|---|---|---|---|---|---|---|
| Gross sales price | | | | | | | | | |
| Cost or basis | 24,518 | | | | | | | | |
| Commissions/other expenses | | | | | | | | | |
| Accumulated depr excluding Sec 179 | | | | | | | | | |
| Section 179 | 24,518 | | | | | | | | |
| AMT gain/loss adjustment | | | | | | | | | |
| Sale to related party | | | | | | | | | |
| Casualty gain on Form 4797, Part III | | | | | | | | | |
| Section 1250 property | NO | | | | | | | | |

| Installment Sale Information: |
|---|
| Mortgage and other debts |
| Current year payments received |
| Prior year payments received |
| Installment Sale Related Party Info: |

| Casualty / Theft Information: |
|---|
| Total net reimbursement |
| Cost or basis |
| Accumulated depr excluding Sec 179 |
| Section 179 |
| FMV before loss |
| FMV after loss |
| AMT gain/loss adjustment |
| Property type |

# Federal Asset Report
## Form 1120S, Page 1

| Asset | Description | Date In Service | Cost | Bus % | Sec 179 | Bonus | Basis for Depr | Per | Conv | Meth | Prior | Current |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Section 179 Expense:** | | | | | | | | | | | | |
| 22 | EQUIPMENT | 12/31/17 | 147,144 | X | X | | N/A | 5 | HY | 200DB | 0 | 147,144 |
| | | | 147,144 | | | | N/A | | | | 0 | 147,144 |
| | | | | | | | | | | | | |
| **5-year GDS Property:** | | | | | | | | | | | | |
| 22 | EQUIPMENT | 12/31/17 | N/A* | X | X | | 0 | 5 | HY | 200DB | 0 | 0 |
| 23 | TRUCK | 9/27/17 | 65,364 | | | | 65,364 | 5 | HY | 200DB | 0 | 13,073 |
| 24 | TRAILER | 1/01/17 | 95,221 | | | | 95,221 | 5 | HY | 200DB | 0 | 19,044 |
| | | | 160,585 | | | | 160,585 | | | | 0 | 32,117 |
| | | | | | | | | | | | | |
| **Prior MACRS:** | | | | | | | | | | | | |
| 1 | EQUIPMENT | 4/18/13 | 178,000 | | X | | 89,000 | 5 | HY | 200DB | 178,000 | 0 |
| 2 | TRUCK | 4/27/15 | 24,390 | X | X | | 0 | 5 | HY | 200DB | 24,390 | 0 |
| 3 | TRUCK | 4/27/15 | 27,327 | X | X | | 0 | 5 | HY | 200DB | 27,327 | 0 |
| 4 | TRUCK | 5/05/15 | 32,345 | X | X | | 0 | 5 | HY | 200DB | 32,345 | 0 |
| 5 | TRUCK | 5/05/15 | 24,518 | X | X | | 0 | 5 | HY | 200DB | 24,518 | 0 |
| | Sold/Scrapped: 3/21/17 | | | | | | | | | | | |
| 6 | TRUCK | 4/27/15 | 26,504 | X | X | | 0 | 5 | HY | 200DB | 26,504 | 0 |
| 7 | TRUCK | 7/03/15 | 26,318 | X | X | | 0 | 5 | HY | 200DB | 26,318 | 0 |
| 8 | TRUCK | 10/01/15 | 50,977 | X | X | | 0 | 5 | HY | 200DB | 50,977 | 0 |
| 16 | TRUCK | 1/28/16 | 56,711 | X | X | | 0 | 5 | MQ | 200DB | 56,711 | 0 |
| 17 | TRUCK | 1/28/16 | 32,724 | X | X | | 0 | 5 | MQ | 200DB | 32,724 | 0 |
| 20 | MACHINERY & EQUIP | 4/22/16 | 100,000 | X | X | | 0 | 5 | MQ | 200DB | 100,000 | 0 |
| 21 | FURNITURE & FIXTURES | 12/31/16 | 116,750 | | X | | 110,912 | 5 | MQ | 200DB | 5,838 | 44,365 |
| | | | 696,564 | | | | 199,912 | | | | 585,652 | 44,365 |
| | | | | | | | | | | | | |
| **Amortization:** | | | | | | | | | | | | |
| 25 | PREPAID INTEREST | 1/01/17 | 7,033 | | | | 7,033 | 5 | MO | Amort | 0 | 1,407 |
| 26 | PREPAID INTEREST | 12/31/17 | 19,855 | | | | 19,855 | 5 | MO | Amort | 0 | 331 |
| 9 | PREPAID INTEREST | 4/27/15 | 3,620 | | | | 3,620 | 5 | MO | Amort | 1,207 | 724 |
| 10 | PREPAID INTEREST | 4/27/15 | 3,685 | | | | 3,685 | 5 | MO | Amort | 1,228 | 737 |
| 11 | PREPAID INTEREST | 4/27/15 | 3,562 | | | | 3,562 | 5 | MO | Amort | 1,187 | 712 |
| 12 | PREPAID INTEREST | 5/05/15 | 3,861 | | | | 3,861 | 5 | MO | Amort | 1,287 | 772 |
| 13 | PREPAID INTEREST | 5/05/15 | 2,830 | | | | 2,830 | 5 | MO | Amort | 943 | 1,887 |
| | Sold/Scrapped: 3/21/17 | | | | | | | | | | | |
| 14 | PREPAID INTEREST | 7/03/15 | 3,872 | | | | 3,872 | 5 | MO | Amort | 1,161 | 774 |
| 15 | PREPAID INTEREST | 10/01/15 | 10,918 | | | | 10,918 | 5 | MO | Amort | 2,730 | 2,184 |
| 18 | PREPAID INTEREST | 1/28/16 | 9,220 | | | | 9,220 | 5 | MO | Amort | 1,690 | 1,844 |
| 19 | PREPAID INTEREST | 1/28/16 | 4,857 | | | | 4,857 | 5 | MO | Amort | 890 | 971 |
| | | | 73,313 | | | | 73,313 | | | | 12,323 | 12,343 |
| | **Grand Totals** | | 1,077,606 | | | | 433,810 | | | | 597,975 | 235,969 |
| | **Less: Dispositions and Transfers** | | 27,348 | | | | 2,830 | | | | 25,461 | 1,887 |
| | **Less: Start-up/Org Expense** | | 0 | | | | 0 | | | | 0 | 0 |
| | **Net Grand Totals** | | 1,050,258 | | | | 430,980 | | | | 572,514 | 234,082 |

*Because this asset has 179 expense, its cost has been included in the Section 179 Property cost total

# Bonus Depreciation Report

| Asset | Property Description | Date In Service | Tax Cost | Bus Pct | Tax Sec 179 Exp | Current Bonus | Prior Bonus | Tax - Basis for Depr |
|---|---|---|---|---|---|---|---|---|
| **Activity:  Form 1120S, Page 1** | | | | | | | | |
| 1 | EQUIPMENT | 4/18/13 | 178,000 | 100 | 0 | 0 | 89,000 | 89,000 |
| 2 | TRUCK | 4/27/15 | 24,390 | 100 | 24,390 | 0 | 0 | 0 |
| 3 | TRUCK | 4/27/15 | 27,327 | 100 | 27,327 | 0 | 0 | 0 |
| 4 | TRUCK | 5/05/15 | 32,345 | 100 | 32,345 | 0 | 0 | 0 |
| 5 | TRUCK | 5/05/15 | 24,518 | 100 | 24,518 | 0 | 0 | 0 |
| 6 | TRUCK | 4/27/15 | 26,504 | 100 | 26,504 | 0 | 0 | 0 |
| 7 | TRUCK | 7/03/15 | 26,318 | 100 | 26,318 | 0 | 0 | 0 |
| 8 | TRUCK | 10/01/15 | 50,977 | 100 | 50,977 | 0 | 0 | 0 |
| 16 | TRUCK | 1/28/16 | 56,711 | 100 | 56,711 | 0 | 0 | 0 |
| 17 | TRUCK | 1/28/16 | 32,724 | 100 | 32,724 | 0 | 0 | 0 |
| 20 | MACHINERY & EQUIP | 4/22/16 | 100,000 | 100 | 100,000 | 0 | 0 | 0 |
| 21 | FURNITURE & FIXTURES | 12/31/16 | 116,750 | 100 | 0 | 0 | 5,838 | 110,912 |
| 22 | EQUIPMENT | 12/31/17 | 147,144 | | 147,144 | 0 | 0 | 0 |
| | **Form 1120S, Page 1** | | 843,708 | | 147,144 | 0 | 94,838 | 199,912 |
| | ***Less:  Dispositions and Transfers** | | 24,518 | | 0 | 0 | 0 | 0 |
| | **Net Form 1120S, Page 1** | | 819,190 | | 147,144 | 0 | 94,838 | 199,912 |
| | **Grand Total** | | 843,708 | | 147,144 | 0 | 94,838 | 199,912 |
| | **Less:  Dispositions and Transfers** | | 24,518 | | 0 | 0 | 0 | 0 |
| | **Net Grand Total** | | 819,190 | | 147,144 | 0 | 94,838 | 199,912 |

| Asset | Description | Date In Service | Cost | Bus % | Sec 179 | Bonus | Basis for Depr | Per | Conv | Meth | Prior | Current |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Section 179 Expense:** | | | | | | | | | | | | |
| 22 | EQUIPMENT | 12/31/17 | 147,144 | X | X | | N/A | 5 | HY | 200DB | 0 | 147,144 |
| | | | 147,144 | | | | N/A | | | | 0 | 147,144 |
| **5-year GDS Property:** | | | | | | | | | | | | |
| 22 | EQUIPMENT | 12/31/17 | N/A* | X | X | | 0 | 5 | HY | 200DB | 0 | 0 |
| 23 | TRUCK | 9/27/17 | 65,364 | | | | 65,364 | 5 | HY | 150DB | 0 | 9,805 |
| 24 | TRAILER | 1/01/17 | 95,221 | | | | 95,221 | 5 | HY | 150DB | 0 | 14,283 |
| | | | 160,585 | | | | 160,585 | | | | 0 | 24,088 |
| **Prior MACRS:** | | | | | | | | | | | | |
| 1 | EQUIPMENT | 4/18/13 | 178,000 | | X | | 89,000 | 5 | HY | 150DB | 178,000 | 0 |
| 2 | TRUCK | 4/27/15 | 24,390 | X | X | | 0 | 3 | HY | 150DB | 24,390 | 0 |
| 3 | TRUCK | 4/27/15 | 27,327 | X | X | | 0 | 3 | HY | 150DB | 27,327 | 0 |
| 4 | TRUCK | 5/05/15 | 32,345 | X | X | | 0 | 3 | HY | 150DB | 32,345 | 0 |
| 5 | TRUCK              Sold/Scrapped:  3/21/17 | 5/05/15 | 24,518 | X | X | | 0 | 3 | HY | 150DB | 24,518 | 0 |
| 6 | TRUCK | 4/27/15 | 26,504 | X | X | | 0 | 3 | HY | 150DB | 26,504 | 0 |
| 7 | TRUCK | 7/03/15 | 26,318 | X | X | | 0 | 3 | HY | 150DB | 26,318 | 0 |
| 8 | TRUCK | 10/01/15 | 50,977 | X | X | | 0 | 3 | HY | 150DB | 50,977 | 0 |
| 16 | TRUCK | 1/28/16 | 56,711 | X | X | | 0 | 5 | MQ | 150DB | 56,711 | 0 |
| 17 | TRUCK | 1/28/16 | 32,724 | X | X | | 0 | 5 | MQ | 150DB | 32,724 | 0 |
| 20 | MACHINERY & EQUIP | 4/22/16 | 100,000 | X | X | | 0 | 5 | MQ | 150DB | 100,000 | 0 |
| 21 | FURNITURE & FIXTURES | 12/31/16 | 116,750 | | X | | 112,372 | 5 | MQ | 150DB | 4,378 | 33,712 |
| | | | 696,564 | | | | 201,372 | | | | 584,192 | 33,712 |
| | Grand Totals | | 1,004,293 | | | | 361,957 | | | | 584,192 | 204,944 |
| | Less: Dispositions and Transfers | | 24,518 | | | | 0 | | | | 24,518 | 0 |
| | Net Grand Totals | | 979,775 | | | | 361,957 | | | | 559,674 | 204,944 |

*Because this asset has 179 expense, its cost has been included in the Section 179 Property cost total

5609 INTERIOR COMMERCIAL INSTALLATION, I
04/23/2018  3:17 PM

**Depreciation  Adjustment  Report**
**All Business Activities**

██████98

FYE: 12/31/2017

| Form | Unit | Asset | Description | Tax | AMT | AMT Adjustments/ Preferences |
|------|------|-------|-------------|-----|-----|------------------------------|
| **MACRS Adjustments:** | | | | | | |
| Page 1 | 1 | 1 | EQUIPMENT | 0 | 0 | 0 |
| Page 1 | 1 | 2 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 3 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 4 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 5 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 6 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 7 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 8 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 16 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 17 | TRUCK | 0 | 0 | 0 |
| Page 1 | 1 | 20 | MACHINERY & EQUIP | 0 | 0 | 0 |
| Page 1 | 1 | 21 | FURNITURE & FIXTURES | 44,365 | 33,712 | 10,653 |
| Page 1 | 1 | 22 | EQUIPMENT | 147,144 | 147,144 | 0 |
| Page 1 | 1 | 23 | TRUCK | 13,073 | 9,805 | 3,268 |
| Page 1 | 1 | 24 | TRAILER | 19,044 | 14,283 | 4,761 |
| | | | | 223,626 | 204,944 | 18,682 |

| Asset | Description | Date In Service | Cost | Tax | AMT |
|---|---|---|---|---|---|
| **Prior MACRS:** | | | | | |
| 1 | EQUIPMENT | 4/18/13 | 178,000 | 0 | 0 |
| 2 | TRUCK | 4/27/15 | 24,390 | 0 | 0 |
| 3 | TRUCK | 4/27/15 | 27,327 | 0 | 0 |
| 4 | TRUCK | 5/05/15 | 32,345 | 0 | 0 |
| 6 | TRUCK | 4/27/15 | 26,504 | 0 | 0 |
| 7 | TRUCK | 7/03/15 | 26,318 | 0 | 0 |
| 8 | TRUCK | 10/01/15 | 50,977 | 0 | 0 |
| 16 | TRUCK | 1/28/16 | 56,711 | 0 | 0 |
| 17 | TRUCK | 1/28/16 | 32,724 | 0 | 0 |
| 20 | MACHINERY & EQUIP | 4/22/16 | 100,000 | 0 | 0 |
| 21 | FURNITURE & FIXTURES | 12/31/16 | 116,750 | 26,619 | 23,598 |
| 22 | EQUIPMENT | 12/31/17 | 147,144 | 0 | 0 |
| 23 | TRUCK | 9/27/17 | 65,364 | 20,916 | 16,667 |
| 24 | TRAILER | 1/01/17 | 95,221 | 30,471 | 24,282 |
| | | | 979,775 | 78,006 | 64,547 |
| **Amortization:** | | | | | |
| 25 | PREPAID INTEREST | 1/01/17 | 7,033 | 1,406 | 0 |
| 26 | PREPAID INTEREST | 12/31/17 | 19,855 | 3,971 | 0 |
| 9 | PREPAID INTEREST | 4/27/15 | 3,620 | 724 | 0 |
| 10 | PREPAID INTEREST | 4/27/15 | 3,685 | 737 | 0 |
| 11 | PREPAID INTEREST | 4/27/15 | 3,562 | 713 | 0 |
| 12 | PREPAID INTEREST | 5/05/15 | 3,861 | 772 | 0 |
| 14 | PREPAID INTEREST | 7/03/15 | 3,872 | 775 | 0 |
| 15 | PREPAID INTEREST | 10/01/15 | 10,918 | 2,183 | 0 |
| 18 | PREPAID INTEREST | 1/28/16 | 9,220 | 1,844 | 0 |
| 19 | PREPAID INTEREST | 1/28/16 | 4,857 | 972 | 0 |
| | | | 70,483 | 14,097 | 0 |
| | **Grand Totals** | | 1,050,258 | 92,103 | 64,547 |

| Form **1120S** | Schedule K-1 Summary Worksheet | **2017** |
|---|---|---|

**Name**

INTERIOR COMMERCIAL INSTALLATION, I

**Employer Identification Number**

⬛⬛⬛⬛⬛⬛⬛⬛98

| Shareholder Name | SSN/EIN |
|---|---|
| Column A ............ JENS CHRISTIAN JENSEN | ⬛⬛⬛-7900 |
| Column B ............ | |
| Column C ............ | |
| Column D ............ | |

| | Schedule K Items | Column A | Column B | Column C | Column D | SCH K TOTAL |
|---|---|---|---|---|---|---|
| 1 | Ordinary income | 240,548 | | | | 240,548 |
| 2 | Net rental RE inc | | | | | |
| 3c | Net other rental inc | | | | | |
| 4 | Interest income | | | | | |
| 5a | Ordinary dividends | | | | | |
| 5b | Qualified dividends | | | | | |
| 6 | Royalties | | | | | |
| 7 | Net ST capital gain | | | | | |
| 8a | Net LT capital gain | | | | | |
| 8b | Collectibles 28% gain | | | | | |
| 8c | Unrecap Sec 1250 | | | | | |
| 9 | Net Sec 1231 gain | | | | | |
| 10 | Other income (loss) | | | | | |
| 11 | Sec 179 deduction | 147,144 | | | | 147,144 |
| 12a | Contributions | | | | | |
| 12b | Invest interest exp | | | | | |
| 12c | Sec 59(e)(2) exp | | | | | |
| 12d | Other deductions | | | | | |
| 13a | Low-inc house 42|5 | | | | | |
| 13b | Low-inc house other | | | | | |
| 13c | Qualif rehab exp | | | | | |
| 13d | Rental RE credits | | | | | |
| 13e | Other rental credits | | | | | |
| 13f | Biofuel credit | | | | | |
| 13g | Other credits | | | | | |
| 14b | Gross inc all src | | | | | |
| 14d-f | Total foreign inc | | | | | |
| 14g-k | Total foreign deds | | | | | |
| 14l | Total foreign taxes | | | | | |
| 14m | Reduct in taxes | | | | | |
| 15a | Depr adjustment | 18,682 | | | | 18,682 |
| 15b | Adjusted gain (loss) | | | | | |
| 15c | Depletion | | | | | |
| 15d | Inc-oil/gas/geoth | | | | | |
| 15e | Ded-oil/gas/geoth | | | | | |
| 15f | Other AMT items | | | | | |
| 16a | Tax-exempt interest | | | | | |
| 16b | Other tax-exempt | | | | | |
| 16c | Nonded expense | 76,674 | | | | 76,674 |
| 16d | Distributions | 129,670 | | | | 129,670 |
| 16e | Shr loan repmts | | | | | |
| 17a | Investment income | | | | | |
| 17b | Investment expense | | | | | |
| 18 | Income (loss) | 93,404 | | | | 93,404 |

# Retained Earnings Reconciliation Worksheet

| Form **1120S** | For calendar year 2017 or tax year beginning , ending | **2017** |
|---|---|---|

| Name | Employer Identification Number |
|---|---|
| **INTERIOR COMMERCIAL INSTALLATION, I** | ▓▓▓▓98 |

## Schedule L - Retained Earnings

| | |
|---|---:|
| Retained Earnings - Unappropriated | 0 |
| Accumulated Adjustments Account | -86,771 |
| Other Adjustments Account | 0 |
| Undistributed Previously Taxed Income | 0 |
| Schedule L, Line 24 - Retained Earnings | -86,771 |

## Schedule M-2 - Retained Earnings

| | Accumulated Adjustments Account | Other Adjustments Account | Undistributed Previously Taxed Income | Retained Earnings Unappropriated/ Timing Differences | Total Retained Earnings |
|---|---:|---:|---:|---:|---:|
| Beginning of Year Balance | 26,169 | 0 | 0 | 0 | 26,169 |
| Ordinary Income (Loss) | 240,548 | | | | 240,548 |
| Other Additions | | | | | |
| Other Reductions | 223,818 | | | | 223,818 |
| Distributions | 129,670 | | | | 129,670 |
| End of Year Balance | -86,771 | 0 | 0 | 0 | -86,771 |

## Form 1120S, Retained Earnings Reconciliation Worksheet, AAA - Other Reductions

| Description | Amount |
|---|---|
| MEALS & ENTERTAINMENT | $  76,674 |
| SECTION 179 EXPENSE | 147,144 |
| TOTAL | $  223,818 |