DAVID C. JOHNSTON
LAW OFFICES OF DAVID C. JOHNSTON
1600 G. STREET, SUITE 102
MODESTO, CALIFORNIA 95354
TEL (209)579-1150

Attorney for Debtor in Possession,
INTERIOR COMMERCIAL INSTALLATION, INC.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

In Re:

INTERIOR COMMERCIAL
INSTALLATION, INC.,

    Debtor in Possession.

CASE NO. 18-42874

CHAPTER 11

DATE:
TIME:
PLACE:

JUDGE: HON. William J. Lafferty

### DECLARATION OF JENS C. JENSEN IN SUPPORT OF DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL

I, Jens C. Jensen, declare:

1. I am the president and manager of Interior Commercial Installation, Inc. I work actively in the company and have personal knowledge of the following facts and would be competent to testify if called as a witness.

2. I require the use of cash collateral for the payment of certain operating expenses as set forth on the budget attached hereto as Exhibit "A." I believe the expenses listed on the

budget are reasonable and necessary business expenses which must be paid in order to continue the business.

3. I employ approximately 25 people, who precisely cut and install marble slab in commercial real estate projects, such as office buildings. I have two business locations; one in Brentwood and one in San Francisco. I have been in business for 5 years as a corporation and the principal shareholder has been in the slab business for 25 years. I bid about $1,500,000 in jobs per month and I am awarded about $450,000 in contracts.

4. There are eight "on line" loans made to me (see Exhibit B).

5. I did a UCC-1 search and cannot ascertain how many of these loans have filed UCC-1 filings. But it has been established that loans made by Kalamata and Yellowstone are supported by UCC-1 filings (See Exhibits E and F).

6. Prior to the petition date, the I entered into a number of transactions whereby the other party (designated the "Purchaser" ) would purportedly purchase the future receipts. In one transaction, for example, the Purchaser paid me $84,000.00 for $124,320.00 of "future receipts" to be deducted from my bank account at the rate of $1,234.20 *per day*. I believe that the transactions were structured in this was to avoid the application of California's usury laws. The transactions also involved the use of confessions of judgment signed by me, as president, which could be filed in the New York Supreme Court after any default, even if one day's bank deduction was dishonored.

7. In fact, after the daily bank deductions were stopped for a few days, two of the Purchasers filed confessions of judgment, obtained judgments, and levied my account at JP Morgan chase Bank, It's main office being in New York.

8. Two Purchasers sent letters to at least one of my biggest customers and "requested that a hold be placed on my accounts receivable" (see letters, Exhibits D and E). The Purchaser's attorney warned my customer that if he didn't forward all funds to the Purchaser, that customer would be liable for damages. As a result, my customers are unwilling to pay me given this demand and threat from those lenders. Customers have checks waiting to be sent to me, but now those checks are being held by my customers until the Court grants use of Cash Collateral. One creditor, Commercial Case Work, owes me $259,000 for completed jobs. However, some of those receivables are not yet due.

9. I cannot make payroll of about $75,000 every two weeks and pay the other expenses listed on the budget without use of the Cash Collateral.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed at Brentwood, California on December 7, 2018.

/s/ Jens C. Jensen
Jens C. Jensen